**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| LANCE LARKIN and KAREN JACOBS, Individually and Representatives of All Persons Similarly Situated, | § § § § | |
| Plaintiffs, | § § | No. _____ |
| vs. | § § | JURY DEMANDED |
| UNITED SERVICES AUTOMOBILE ASSOCIATION and AUTO INJURY SOLUTIONS, INC., | § § § § | |
| Defendants. | § | |

**EXHIBIT 2**
**TO DEFENDANTS' NOTICE OF REMOVAL:**

**PLEADINGS AND ANSWERS FILED**

In compliance with 28 U.S.C § 1446(a) and Local Rule 81, the Defendants submit the following pleadings asserting causes of action, and the answers to those pleadings, in support of their Notice of Removal in the above-referenced action:

A.    Plaintiffs' Original Complaint and Putative Class Action Complaint and Request for Disclosure; and

B.    Plaintiffs' First Amended Complaint and Putative Class Action Complaint and Request for Disclosure.

*Neither of the Defendants has filed an Answer in state court as of the date of removal.*

Dated:  December 27, 2016          Respectfully submitted,

By:    */s/ Christopher W. Martin*_____
          Christopher W. Martin, Attorney-in-Charge
          Southern District Bar No. 13515

State Bar No. 13057620

P. Wayne Pickering
Southern District Bar No. 12693
State Bar No. 15975030

Martin, Disiere, Jefferson & Wisdom, L.L.P.
Niels Esperson Building
808 Travis Street, 20th Floor
Houston, Texas  77002
(713) 632-1700 (Telephone)
(713) 222-0101 (Facsimile)

**Attorneys for Defendant**
**United Services Automobile Association**

By:  */s/ Richard G. Foster*
     Richard G. Foster, Attorney-in-Charge
     Southern District Bar No. 5907
     State Bar No. 07295100

     Raj S. Aujla
     Southern District Bar No. 1215554
     State Bar No. 24064846

     Porter, Rogers, Dahlman & Gordon, P.C.
     Trinity Plaza II
     745 E. Mulberry, Suite 450
     San Antonio, Texas 78212
     (210) 736-3900 (Telephone)
     (210) 736-1992 (Facsimile)

     **Attorneys for Defendant**
     **Auto Injury Solutions**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded via electronic service through the Court's CM/ECF and/or facsimile or certified mail, return receipt requested, on this the 27th day of December, 2016, to the following counsel of record:

Brad T. Wyly
Wyly & Cook, LLP
4101 Washington Ave.
Houston, Texas 77007

Joshua P. Davis
Davis Law Group
1010 Lamar, Suite 200
Houston, Texas 77002

*/s/  P. Wayne Pickering*
P. Wayne Pickering

# EXHIBIT "A"

# 2016-77484 / Court: 189

CAUSE NO. _____

| | | |
|---|---|---|
| **LANCE LARKIN, KAREN JACOBS, DEBI HAZLETT, and DOUGLAS HAZLETT, Individually and as Representatives of All Persons Similarly Situated,** | § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § | |
| vs. | § § | HARRIS COUNTY, TEXAS |
| **UNITED SERVICES AUTOMOBILE ASSOCIATION and AUTO INJURY SOLUTIONS, INC.,** | § § § § § | |
| *Defendants.* | § § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL COMPLAINT
## AND PUTATIVE CLASS ACTION COMPLAINT
## AND REQUEST FOR DISCLOSURE

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW, Lance Larkin, Karen Jacobs, Debi Hazlett, and Douglas Hazlett, Individually and as Representatives of All Persons Similarly Situated, Plaintiffs herein, complaining of United Services Automobile Association ("USAA") and Auto Injury Solutions, Inc. ("AIS"), Defendants, and files Plaintiffs' Original Complaint and Putative Class Action Complaint and Request for Disclosure. For causes of action Plaintiffs would show as follows:

### I. INTRODUCTION

1.1     This is a suit for money damages and declaratory relief on behalf of Plaintiffs and all persons similarly situated (collectively referred to as the "Class" or "Plaintiffs") as a result of the Defendants' wrongful actions outlined below. Defendants USAA and AIS

1

engage in a pattern of practice in which they automatically and routinely deny, delay, and/or underpay properly submitted personal injury protection ("PIP") claims related to automobile accidents for no legitimate reason, or for reasons that are prohibited by statute.

## II. PARTIES

2.1     Plaintiff Lance Larkin is a resident of Harris County, Texas and may be served with notice through the undersigned attorney.

2.2     Plaintiff Karen Jacobs is a resident of Harris County, Texas and may be served with notice through the undersigned attorney.

2.3     Plaintiff Debi Hazlett is a resident of Texas and may be served with notice through the undersigned attorney.

2.4     Plaintiff Douglas Hazlett (Collectively with Debi Hazlett, the "Hazlett Plaintiffs") (Collectively with Larkin and Jacobs, the "Named Plaintiffs") is a resident of Texas and may be served with notice through the undersigned attorney.

2.5     Defendant Auto Injury Solutions, Inc. is a foreign for-profit company doing business in the State of Texas. Auto Injury Solutions, Inc. may be served with citation by certified mail, return receipt requested, by serving Corporation Service Company, d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Ste. 620, Austin, Texas 78701.

2.6     Defendant, United Services Automobile Association, is a duly incorporated insurance company, authorized to do business in and doing business in the State of Texas. Defendant USAA may be served with citation by certified mail, return receipt requested,

2

by serving C.T. Corporation System, 350 N. St. Paul Street, Ste. 2900, Dallas, Texas 75201.

### III. JURISDICTION & VENUE

3.1    This court has jurisdiction over the parties and the subject matter of this action in that Defendants are subject to process in this State and the amount in controversy is within the jurisdictional limits of this Court.

3.2    Venue is proper in the Harris County, as many of the events that give rise to this action occurred in Harris County, Texas.

3.3    Plaintiffs intend that discovery be conducted under Level 3.

### IV. FACTS SPECIFIC TO THE NAMED PLAINTIFFS

*A.    The policies of insurance at issue; insured-insurer relationship*

4.1    In 2014, Lance Larkin was covered by an automobile insurance policy issued by USAA (the "Larkin Policy"). In 2013, the Hazlett Plaintiffs were covered by an automobile insurance policy issued by USAA (the "Hazlett Policy"). In 2013, the Karen Jacobs was covered by an automobile insurance policy issued by USAA (the "Jacobs Policy," together with the Larkin Policy and the Hazlett Policy, the "Policies").

4.2    The Policies included Personal Injury Protection Coverage or "PIP."

4.3    In addition to the terms of the contracts, the PIP provisions of the Policies issued to the Named Plaintiffs are governed by TEXAS INSURANCE CODE §§1952.151—1952.161 (Subchapter D of Chapter 1952 of the TEXAS INSURANCE CODE).

4.4    The Named Plaintiffs faithfully paid their premiums, including the premiums charged for PIP.

3

4.5    USAA accepted the premiums paid by the Named Plaintiffs, including the premiums charged for PIP.

4.6    The Policies are valid, enforceable contracts between the Named Plaintiffs and USAA.

4.7    The Larkin Policy was valid and in force at the time of his underlying accident on February 19, 2014 (the "Larkin Accident"), and at all relevant times since then. The Hazlett Policy was valid and in force at the time of their underlying accident on November 16, 2013 (the "Hazlett Accident"). The Jacobs Policy was valid and in force at the time of her underlying accident on June 7, 2013 (the "Jacobs Accident," together with the Larkin Accident and the Hazlett Accident, the "Accidents").

4.8    The Accidents are covered causes of loss under the Policies, and Defendants have never disputed that the Accidents are covered by the Named Plaintiffs' PIP.

4.9    Each of the Policies is an "insurance contract" as that term is commonly used in the law of insurance.

4.10    USAA is an "insurer" as that term is commonly used in the law of insurance with regard to the Policies.

4.11    On the dates of the Accidents, each of the Named Plaintiffs was a "covered person" as that term is defined in the Policies.

4.12    On the dates of the Accidents, each of the Named Plaintiffs was an "insured" as that term is commonly used in the law of insurance with regard to the Policies.

4

4.13    Each of the Named Plaintiffs is a "person" as that term is defined by Section 541.002(2) of the TEXAS INSURANCE CODE as construed by *Ceshker v. Bankers Commercial Life Ins.*, 568 S.W.2d 128, 129 (Tex. 1978).

4.14    USAA is a "person" as that term is defined by Section 541.002(2) of the TEXAS INSURANCE CODE.

4.15    As reflected in the Larkin Policy, Larkin's PIP coverage limit was $2,500 per person at the time of the Larkin Accident. As reflected in the Hazlett Policy, the Hazletts' PIP coverage limit was $10,000 per person at the time of the Hazlett Accident. As reflected in the Jacobs Policy, Jacobs' PIP coverage limit was $100,000 per person at the time of the Jacobs Accident.

4.16    USAA is required to pay benefits in accordance with the TEXAS INSURANCE CODE provisions governing PIP and the Policy language. Under the TEXAS INSURANCE CODE:

> [P]ersonal injury protection consists of provisions of an automobile liability insurance policy that provide for payment to the named insured in the policy...all reasonable expenses that: (1) arise from an accident; (2) are incurred not later than the third anniversary of the date of the accident; and (3) are for:
>
> (A)    necessary medical, surgical, x-ray, or dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing or funeral services;

5

(B)     in the case of an income producer, replacement of income lost as a result of the accident.

TEX. INS. CODE §1952.151.

4.17    Additionally, PIP benefits are "payable without regard to: (1) the fault or nonfault of the named insured or recipient in causing or contributing to the accident; and (2) any collateral source of medical, hospital, or wage continuation benefits." TEX. INS. CODE §1952.155.

4.18    Under the Policies, the Named Plaintiffs were entitled to recover their reasonable medical expenses. The Policies required USAA to pay reasonable fees for necessary and appropriate medical services.

### B.    The Accident giving rise to Larkin's insurance claim

4.19    On February 19, 2014, Larkin was driving southbound on West Lake Houston Parkway with his two daughters, Taylor and Megan, in the car. A driver who was drunk and high on drugs was driving on the same road. This severely intoxicated driver struck multiple vehicles on the road including repeated collisions with Larkin's vehicle. These collisions caused Larkin's vehicle to slam into and over the cement barrier on the bridge on which Larkin was driving at the time.

4.20    On impact, Larkin felt sharp pains in his back, neck, and shoulders. Larkin was able to scramble from his vehicle and move his daughters to safety. Paramedics were called to the scene where they immobilized four year old Megan and seven year old Taylor on backboards and neck braces. Larkin and his daughters were then taken to Kingwood Medical Center emergency room for treatment.

6

4.21 Larkin's daughters were cleared of any serious injuries, however doctors did note the girls' substantial fear and anxiety over the crash. It was determined that Larkin was not in an emergency condition, but his physical injuries were apparent due to the severe pain he was experiencing in his neck, back, and shoulders. Larkin was advised by doctors to seek follow-up treatment as soon as possible.

4.22 Larkin did follow up with Dr. Katherine Ona at Vault Chiropractic to determine the cause of and treat the persistent pain in his back, neck, and shoulders. Dr. Ona administered a series of exams and reported:

- Cervical range of motion was restricted with extension, left lateral flexion due to pain. Provocative tests were performed to the cervical spine and revealed Maximum Cervical compression, Distraction and Shoulder Depression orthopedic tests revealed cervical pain on the right. There was tenderness upon palpation to the cervical paraspinal, scalene and upper trapezius muscles. Sensory, deep tendon reflexes (DTRs) and motor tests were within normal limits.

- Radiographic examination of the cervical spine revealed abnormal straightening of the normal cervical spine curvature suggesting possible muscle spasm. Mild loss of height involving the C5 vertebral body with height loss estimated at 20%, age indeterminate.

- Lumbar spine: Lumbar ranges of motion were within normal limits. Provocative tests were performed to the lumbar spine and revealed Kemp's and Yeoman's orthopedic tests were positive for lumbar pain. There was tenderness upon palpation to lumbar paraspinal and bilateral gluteal musculature.

- The tests performed were indicative of the following diagnosis: 847.0 Cervical Sprain/Strain; 874.1 Thoracic Sprain/Strain; 874.2 Lumbar Sprain/Strain

4.23 Larkin's injuries required substantial ongoing medical treatment and physical therapy. Larkin underwent therapeutic exercises 2-3 times per week that consisted

7

of ultrasound, electrical muscle stimulation (EMS), massage therapy, manual therapy, chiropractic manipulation, extensions, stretching exercises, squats, bike/treadmill exercises, heel slides, and other various therapeutic exercises.

4.24    Larkin was referred to One Step Diagnostic due to continued pain in his shoulder and lower back. He was treated by Dr. Kristin Coleman of One Step on March 19, 2014. Dr. Coleman performed X-rays of Larkin's lumbar and cervical spine and reported the following:

- Lumbar Spine: Abnormal straightening of the normal lumbar spine lordosis suggesting possible muscle spasm.

- Cervical Spine: Abnormal straightening of the normal cervical spine curvature suggesting possible muscle spasm.

- Mild loss of height involving the C5 vertebral body with height loss estimated at 20% age indeterminate. If clinically indicated, an MRI of the cervical spine may be helpful for further evaluation.

4.25    Larkin continued therapeutic treatment with Vault Chiropractic through May 9, 2014, although he continued to report occasional discomfort in his right shoulder and lower back and regular pain in those areas each morning.

4.26    Larkin's emergency care bills for him and his daughters, and the bills for Larkin's necessary ongoing treatment totaled approximately $6,605.00.

4.27    The Accident and the resulting medical bills were reported to USAA by and through Larkin's attorney, Mr. Brad Wyly of Wyly & Cook, PLLC in a letter dated December 11, 2014. In the letter, USAA was provided with a summary of the Accident and all verified medical bills for the necessary treatment of Larkin and his daughters.

8

4.28    USAA acknowledged receiving these bills and records through Russell A. Rydman, a representative of AIS and USAA, yet only paid Larkin $400.98 in PIP benefits. USAA compelled Larkin to hire counsel and file this lawsuit to obtain the Larkin Policy benefits he is owed.

4.29    USAA did not reimburse medical bills that USAA acknowledged were due. It is undisputable that Larkin's hospitalization following the Accident and the medical care and treatment he received were medically necessary and appropriate as a result of the Accident: a covered cause of loss under the Policy. The PIP provisions of the TEXAS INSURANCE CODE required these bills to be paid within 30-days of being submitted, without regard to collateral sources. Larkin provided these bills in December 2014, *and now, nearly two years later, they still have not been paid.*

4.30    USAA routinely misrepresents the law to its insureds to deny, delay, and/or underpay claims. These form letters—shifting losses to Medicare or any other insurer—allow USAA to avoid paying millions of dollars in claims each year. In making these misrepresentations USAA violates the Texas Insurance Code by:

    i.  **making an untrue statement of material fact;**

    ii.  failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

    iii.  making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; or,

    iv.  **making a material misstatement of law.**

TEX. INS. CODE ANN. §541.061 (Vernon).

9

4.31   USAA and AIS have been doing this for years in a variety of ways—to the Named Plaintiffs and others—to deny, delay, or underpay properly submitted PIP claims that should be paid.

4.32   Larkin demonstrated his medical expenses to Defendants during the claim submission process. Larkin timely submitted all billing records. He timely submitted his additional medical and billing records for ongoing care.

4.33   Despite having these records, USAA continues to withhold payment of reasonable and necessary medical bills clearly covered under Larkin's PIP insurance. The repeated refusal to reimburse Larkin left him without the PIP benefits he contracted and paid for as reflected in the Policy.

C.   *Auto Injury Solutions*

4.34   Letters from the USAA adjusters indicate that Larkin should send all correspondence and mail to Auto Injury Solutions. Upon information and belief, AIS is USAA's contracted claims administrator. The relationship is so close that Larkin cannot even tell whether individuals, identified as USAA adjusters in correspondence, were actually AIS employees.

4.35   Because of the lack of discovery to clarify the employment and agency relationships of the various adjusters outlined above, Larkin pleads that the acts committed by the various "USAA adjusters" and claims representatives were done jointly or severally by AIS, and that such persons were employees or agents of AIS, either jointly or severally with USAA.

4.36   Upon information and belief, USAA requires policyholders to submit medical records to AIS so that AIS may *create a basis for denial.* That is, if AIS can second guess the provider or make any argument that the policyholder's treatment was unnecessary or not the result of the accident, AIS and USAA will deny the claim. Rather than timely investigating and paying Larkin's PIP claim, AIS used that time to create a pretext for denial.

4.37   AIS is an agent or contractual adjuster for USAA. AIS is a "person" as that term is defined by Section 541.002(2) of the TEXAS INSURANCE CODE.

### D.   The Accident giving rise to Jacobs' insurance claim

4.38   On June 7, 2013 Jacobs was driving northbound near the 12700 block of Jones Road while Herbert McKnight was traveling westbound near the 10900 block of Mist Lane. Failing to yield the right of way, Herbert McKnight attempted to turn left onto Jones Road and crashed into Jacobs' vehicle. Police were dispatched to the scene and Herbert McKnight was cited for failing to yield the right of way. Jacobs presented to North Cypress Emergency Center on June 8, 2013. She was treated for her injuries by Dr. Mark Rigo.

4.39   Jacobs' injuries required substantial ongoing medical treatment and physical therapy. Jacobs underwent therapeutic treatment at North Cypress Medical Center from July 2, 2013 until February 3, 2014. The cost of Jacobs' physical therapy care totals $34,512.50. USAA only reimbursed Jacobs $3,011.96 for this treatment.

4.40   Jacobs' injuries also required chiropractic care. Jacobs underwent chiropractic care from Dr. Amy Nong, DC from October 25, 2013 until January 10, 2014.

11

The cost of Jacobs' chiropractic care totals $3,440. USAA only reimbursed Jacobs $935.00 for this treatment.

4.41    The Accident and the resulting medical bills were reported to USAA by and through Jacobs' attorney. USAA was provided with a summary of the Accident and all verified medical bills for the necessary treatment of Jacobs.

4.42    USAA acknowledged receiving these bills and records which is evidenced by USAA's PIP and Medical Payments Log, yet USAA only paid Jacobs $3,946.96 in PIP benefits for her physical therapy treatment at North Cypress Medical center and her chiropractic treatment by Dr. Amy Nong. USAA compelled Jacobs to hire counsel and file this lawsuit to obtain the Policy benefits she is owed.

4.43    USAA did not reimburse medical bills that USAA acknowledged were due. It is undisputable that Jacobs' treatment following the Accident and the medical care and treatment she received were medically necessary and appropriate as a result of the Accident: a covered cause of loss under the Policy. The PIP provisions of the TEXAS INSURANCE CODE required these bills to be paid within 30-days of being submitted, without regard to collateral sources. Jacobs provided these bills in 2013, *and now, over 3 years later, they still have not been paid.*

4.44    Jacobs demonstrated her medical expenses to Defendants during the claim submission process. Jacobs timely submitted all billing records. She timely submitted her additional medical and billing records for ongoing care.

4.45    Despite having these records, USAA continues to withhold payment of reasonable and necessary medical bills clearly covered under Jacobs' PIP insurance. The

12

repeated refusal to reimburse Jacobs left her without the PIP benefits she contracted and paid for as reflected in the Policy.

**E.** *The Accident giving rise to the Hazletts' insurance claim*

4.46 On November 16, 2013 the Hazletts were rear ended while traveling in their vehicle. At the time of the crash, the Hazletts carried PIP coverage through USAA. Their policy had a PIP limit of $10,000.00 per person or $20,000.00 per incident.

4.47 The Hazletts required medical treatment for their injuries from the crash. Specifically, Debi Hazlett paid and incurred $12,487.47 of medical bills related to the November 16 crash. Doug Hazlett paid and incurred $18,725.77 of medical bills related to the November 16 crash.

4.48 On April 25, 2016, the Hazletts filed their PIP claim with USAA. Rather than paying the amounts due, as required by the Hazlett Policy, USAA underpaid the claim. As to each of Debi and Douglas Hazlett, USAA paid out less than half of the amounts due. While Debi had paid and incurred $12,487.47 of medical bills, USAA paid only $5,015.04 for her claim. And despite Douglas submitting evidence of $18,725.77 of medical bills resulting from the accident, USAA paid only $7,283.95.

4.49 USAA did not reimburse medical bills that USAA acknowledged were due. It is undisputable that the Hazletts' treatment following the Accident and the medical care and treatment they received were medically necessary and appropriate as a result of the Accident: a covered cause of loss under the Policy. The PIP provisions of the TEXAS INSURANCE CODE required these bills to be paid within 30-days of being submitted, without regard to collateral sources.

4.50    The Hazletts demonstrated their medical expenses to Defendants during the claim submission process. They timely submitted all billing records. They timely submitted their additional medical and billing records for ongoing care.

4.51    Despite having these records, USAA continues to withhold payment of reasonable and necessary medical bills clearly covered under the Hazletts' PIP coverage. The repeated refusal to reimburse the Hazletts left them without the PIP benefits they contracted and paid for as reflected in the Policy.

### F.    Facts Relevant to the Class

4.52    USAA and AIS have routinely engaged in a pattern and practice of denying, delaying, and underpaying insureds' legitimate PIP claims. By delaying, denying, or conditioning PIP payments, Defendants have created a systematic means to violate statutory and common law duties and have significantly damaged Plaintiffs, as described more fully below.

4.53    Upon information and belief, USAA and AIS's treatment of the Named Plaintiffs' PIP claims is not unique to the Named Plaintiffs. Nor is it the result of a few "bad apple" employees. In fact, Larkin is personally aware of numerous other policyholders to whom USAA has delayed, denied, underpaid, or conditioned PIP benefits. Upon information and belief, there are numerous attorneys across the State of Texas who will testify that USAA routinely delays, denies, conditions, or underpays PIP claims for its policyholders.

4.54    Furthermore, USAA and AIS's coordinated scheme is betrayed by their rotation of a handful of arbitrary and formulaic excuses: (1) that Medicare or other private

14

insurance is primary, (2) an alleged lack of information, (3) a need for a provider's tax IDs or ICD-9 codes, or (4) references to inapplicable case law concerning the reasonableness and necessity of medical bills paid by the at-fault party. No wonder unrepresented insureds simply give up.

4.55    Nor is this the first allegation against USAA. In the past 5 years: USAA and AIS have been the subject of almost half a dozen class action complaints, in at least five states,[1] concerning the denial or underpayment of PIP benefits. Many of these complaints describe claims identical to the Named Plaintiffs'.[2] For example, in *Soukup v. USAA Casualty Ins. Co.*, USAA's conduct is described:

> USAA contracted with an apparent third-party provider, Auto Injury Solutions, Inc., to assist USAA in implementing and carrying out its fraudulent cost containment program under the guise of AIS providing 'independent' and impartial medical review services. In reality, AIS serves at the direction of USAA, and/or as the alter ego of USAA, in that AIS's services are not rendered independently and are focused on generating false and misleading reports in order to save USAA millions of dollars at the expense of military personnel and their family members who have been injured in automobile collisions and whose bills were reasonable and necessarily incurred.

*See* Ex. "1," pp. 13.

---

[1] *MRI Associates of St. Pete, Inc., d/b/a Saint Pete MRI, et al. v. USAA*; Cause No. 10-CA-016785; 13th Judicial Cir. Ct., Hillsborough Co., FL (Florida); Exhibit "1," *Soukup v. USAA Casualty Ins. Co., et al.*, Cause No. 3:11-CV-565; *see* Exhibit "2," *USAA Sued Over Claims*, San Antonio Express-News, May 12. 2011 (Oregon); *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 362 (D. Ariz. 2009) (Arizona); *Cote v. United Services Automobile Association. et al.*, Cause No. 12-2-12637-2 KNT; Superior Ct. King County, Washington (Washington); *Bemis v. United Services Automobile Association. et al.*; Madison Co. Cir. Ct. 2005 (Illinois).

[2] Exhibit "3," *Notice of Class Settlement in MRI Associates*, pp. 3 ("2. What is this lawsuit about? The lawsuit is about whether USAA improperly failed to make full payment of personal injury protection [] benefits in an amount allowable under chapter 627 of the Florida Statutes.").

## V. CLASS ACTION ALLEGATIONS

5.1    This action is brought as a class action under the TEXAS INSURANCE CODE §541.251. Upon information and belief, USAA and AIS's conduct of denying, delaying, or conditioning PIP payments has been systematic and continuous and has affected similarly situated Plaintiffs over time. Larkin brings this class action to secure redress for USAA and AIS's denial of properly submitted insurance claims and for Texas state statutory and common law causes of action. USAA and AIS's obligations and conduct have been uniform throughout the Class Period and there are common questions of law and fact that affect the entire Class.

5.2    Larkin brings this action individually and on behalf of all persons similarly situated and seeks certification of the following Class:

(a)    All persons who were issued USAA automobile insurance policies in the State of Texas; and

(b)    those policies include PIP coverage by USAA (collectively, the "Coverage") at the time a PIP claim was made; and

(c)    those persons had their PIP benefits improperly delayed, denied, underpaid, or conditioned in violation of TEXAS INSURANCE CODE § 1952, *et seq.*; and,

Excluded from this class are:

(a)    those who have not been denied their benefits coverage by USAA as described above;

(b)    Plaintiffs' counsel; and

(c)    the Judge of the Court to which this case is assigned.

16

5.3 Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. TEX. INS. CODE §541.256(1). The exact number of Class members is unknown, but can be determined from the records maintained by USAA. The Named Plaintiffs believe there are thousands of persons in the Class.

5.4 Plaintiffs anticipate that the class may be divided into sub-classes based on the amount of PIP coverage contracted for by the individual Class Members.

5.5 The Named Plaintiffs are members of the Class of victims described herein.

5.6 There are numerous and substantial questions of law and fact common to all of the members of the Class which will control this litigation and which will predominate over any individual issues. See TEX. INS. CODE §541.256(2). Included within the common questions of law and fact are:

    (a) whether USAA and AIS's denials, delays, underpayments, or conditions regarding payment of Coverage is unlawful;

    (b) whether USAA and AIS's denial, delay, underpayments, or conditions concerning PIP payments harms policyholders;

    (c) whether USAA violated its common law duties of good faith and fair dealing;

    (d) whether USAA breached its contract with each Class member by failing to timely pay properly submitted PIP claims;

    (e) whether USAA breached its contract with each Class member by denying PIP claims unless and until the Class member provided evidence of their injuries;

    (f) whether USAA violated sections §1952.151, et seq. of the TEXAS INSURANCE CODE pertaining to PIP.

    (g) whether USAA and AIS violated sections 541 and USAA violated 542 of the TEXAS INSURANCE CODE;

     (h)     whether USAA was unjustly and substantially enriched as a result of this wrongful conduct;

     (i)     whether the acts and conduct of USAA violated other state and/or common laws; and,

     (j)     whether Class members were damaged as a result of this conduct.

5.7     The claims of the Named Plaintiffs are typical of the claims of the Class and the Named Plaintiffs have no interests adverse to the interests of other members of the Class. See TEX. INS. CODE §541.256(3). To the extent that the Class must be divided into subclasses, that option is available given the uniformity of the questions of law and fact common to any subclasses. TEX. INS. CODE §541.258.

5.8     The Named Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced and competent in the prosecution of class actions, complex litigation, and specifically insurance class action claims.

5.9     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, the Class members will continue to suffer damages and USAA and AIS's conduct will proceed without effective remedy.

5.10     Most individual members of the Class have little interest in or ability to prosecute an individual action, due to the complexity of the issues involved in this litigation and the relatively small, although significant, damages suffered by each member of the Class.

5.11 This action will cause an orderly and expeditious administration of class claims, economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

5.12 This action should present no difficulty that would impede its management by the Court as a class action and is the best available means by which the Named Plaintiffs and the other members of the Class can seek redress for the harm caused to them by Defendants.

## VI. NAMED PLAINTIFFS AND CLASS CLAIMS
## BREACH OF CONTRACT- CLAIM AGAINST USAA

6.1 The insurance policies USAA issued to Plaintiffs are valid and enforceable contracts that requires USAA to pay benefits according to the terms of those policies. By failing to pay the PIP benefits described above, USAA breached the contracts, and as a result, Plaintiffs have incurred damages and unnecessary hardship. The Named Plaintiffs and other similarly situated Plaintiffs included in the class have complied with all conditions precedent to bringing this action, including promptly submitting his proof of loss and giving written notice to USAA of this claim.

6.2 The Named Plaintiffs and other similarly situated Plaintiffs included in the class are proper Plaintiffs to bring this action because they are parties to the insurance contracts breached by USAA.

6.3 The Named Plaintiffs and other similarly situated Plaintiffs included in the class performed under the contract by paying premiums and complying with the contracts' terms and conditions.

19

6.4     USAA breached these contracts by failing to comply with its promise to pay benefits owed under the insurance contracts. The breach is material, as the payment of benefits is the essence of a contract for insurance.

6.5     USAA's breach injured the Named Plaintiffs and the other similarly situated Plaintiffs included in the class by denying them financial resources to pay medical bills and replace lost wages. Had USAA complied with the terms of the contract, the Named Plaintiffs and the other similarly situated Plaintiffs included in the class would have received the money they contracted for and been better off.·

### TEXAS INSURANCE CODE PIP PROVISION VIOLATIONS – CLAIM AGAINST USAA

6.6     USAA has violated TEX. INS. CODE §1952.151, *et seq.* by its refusal to pay PIP benefits in a timely manner. Specifically, USAA violated §1952.155 by refusing to pay benefits without regard to fault or "any collateral source of medical, hospital, or wage continuation benefits."     .

6.7     The TEXAS INSURANCE CODE § 1952.155(a) requires that PIP benefits be paid within 30-days of satisfactory proof of the claim. TEX. INS. CODE § 1952.155(b) notes that an insurer *may require* reasonable medical proof of an alleged recurrence if there is a lapse in treatment; however, no such requirement exists when providing benefits for an initial occurrence so obviously associated with a covered claim.

6.8     In this case, USAA knew that the Named Plaintiffs were injured in the Accidents, as they and their attorneys informed it of that fact.

6.9    USAA never *internally* questioned whether the Named Plaintiffs were actually involved in the Accidents, or the severity of their injuries. USAA simply refused to pay.

6.10    Upon information and belief, these same tactics and schemes to delay, deny, and underpay PIP coverage are employed by USAA against all its policyholders in the State of Texas. Upon information and belief, discovery will reveal similar malfeasance on the part of USAA with regard to the other similarly situated Plaintiffs included in the class. Counsel for Plaintiffs in this case are aware of many other USAA PIP policyholders who have been victimized by USAA's policies. Upon information and belief, there are numerous attorneys representing policyholders against USAA who are aware of multiple instances of conduct such as that described herein.

### TEXAS DECEPTIVE TRADE ACT PRACTICE VIOLATIONS – CLAIM AGAINST USAA AND AIS

6.11    Plaintiffs are "consumer[s]" as defined by TEX. BUS. CODE §17.45(4). Plaintiffs sought or acquired goods or services by purchasing those goods or services from USAA. USAA violated the TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA") (TEX. BUS. & COM. CODE §17.44 *et seq.*) because USAA engaged in false, misleading, and/or deceptive acts or practices that Plaintiffs relied on to their detriment.

6.12    Specifically, Plaintiffs purchased insurance services from USAA.

6.13    USAA violated § 17.46(b) by engaging in "false, misleading, or deceptive acts". All of the acts described below occurred in Texas.

21

6.14    USAA violated § 17.46(b)(5) by representing that its insurance contracts had characteristics, uses, and benefits which they did not have. Specifically, USAA represented to the Named Plaintiffs and the other similarly situated Plaintiffs included in the class, prior to issuing the insurance policy and through its term, that its insurance contracts included PIP benefits as those benefits are described in law. USAA represented that it would pay PIP for a covered person involved in an auto accident, including reasonable fees for medically necessary and appropriate services and 80% of a wage earner's income actually lost. USAA promised these benefits within 30-days of proof of the claim. USAA made these promises in an effort to secure insurance contracts and premiums, and breached these promises in order to avoid contract payments so that USAA could enjoy the profit on unpaid benefits. In fact, USAA's insurance as administered does not provide these benefits, and certainly does not provide them within 30-days, as promised. The facts underlying this claim are described in Section 4, *supra.*

6.15    USAA violated § 17.46(b)(9) by advertising a good or service with the intent not to sell them as advertised. USAA advertised to the Named Plaintiffs and other similarly situated Plaintiffs, prior to issuing the insurance policy and through its term, that it would provide automobile insurance as required by law, and that it would fulfill its contractual obligations when they are triggered. In fact, USAA intended to delay and deny claims and avoid payment of its obligations. USAA intended to avoid payment within the 30-day window, and intended to foist its obligations onto any other party, rather than comply with the terms of its policies.

22

6.16   USAA violated § 17.46(b)(24) by failing to disclose to the Named Plaintiffs and the other similarly situated Plaintiffs USAA's scheme to deny, delay, and underpay legitimate PIP claims. USAA failed to disclose this information in an effort to induce the Plaintiffs to purchase insurance with USAA and maintain insurance with USAA after it was purchased. If USAA had disclosed that it would not honor Texas law or the terms of its contract with the Plaintiffs, they would not have purchased the insurance products offered by USAA. This failure to disclose occurred prior to USAA's issuing the insurance policies and throughout their terms. In fact, USAA intended to delay and deny claims and avoid payment of its obligations. USAA intended to avoid payment within the 30-days it stated it will pay, and intended to foist its obligations onto any other party rather than comply with the terms of its policies. The facts underlying this claim are described in Section 4, *supra*.

6.17   The Named Plaintiffs and other similarly situated Plaintiffs included in the class relied on these false statements, false advertising, and failures to disclose in purchasing insurance with USAA and paying on-going premiums.

6.18   The Named Plaintiffs and other similarly situated Plaintiffs included in the class have suffered damages, namely the loss of the economic benefits promised by USAA, as well as unpaid medical bills and unmet financial needs from lack of replacement for lost income, as a direct result of the violation by USAA.

6.19   Moreover, the course of conduct undertaken by USAA in handling PIP claims for the Named Plaintiffs and other similarly situated Plaintiffs included in the class, including misrepresenting to its insured that it would pay medical bills as they came in and

23

would pay for lost income, misrepresenting that government programs or another insurer is the primary payer, failing to reimburse for covered medical expenses after knowing they should be covered and thus increasing the cost and hardship on its insureds, requesting information that is irrelevant to the determining any material issues under the policy, requesting information already known to USAA, and collecting premiums for coverage which USAA intends to delay and deny, represents an unconscionable course of action in violation of the § 17.50(a)(3). The specifics of this course of conduct as it occurred with regard to Larkin are contained in section 4, *supra*.

6.20    USAA further violated the DTPA due to its violations of TEXAS INSURANCE CODE § 541.151 *et seq.*, the tie-in provisions, which are described in detail below.

6.21    AIS is an agent or contracting adjuster for USAA. Upon information and belief, the acts described in this Complaint (except collecting premiums for coverage which USAA intends to delay or deny) were perpetuated or participated in by AIS as an agent or contracting adjuster for USAA. AIS and USAA worked together in adjusting Larkin's PIP claim, with USAA requesting information previously sent (as directed) to AIS.

6.22    These Defendants' acts and omissions were a producing cause of Plaintiffs' damages.

6.23    These Defendants' conduct was committed knowingly and/or intentionally, because, at the time of the acts and practices complained of USAA and AIS had actual awareness of the falsity, deception or unfairness of their acts and practices giving rise to Plaintiffs' claims and Plaintiffs detrimentally relied on the falsity or deception and/or in detrimental ignorance of the unfairness.

24

## TEXAS INSURANCE CODE §541 ET. SEQ. VIOLATIONS – CLAIM AGAINST USAA AND AIS

6.24    Defendants violated the TEXAS INSURANCE CODE §541 *et. seq.* because they engaged in unfair and/or deceptive acts or practices in the business of insurance.

6.25    USAA violated §541.051(1) by making statements that misrepresented the terms of the insurance policy and the benefits or advantages promised by the policy. USAA represented to Larkin and the other similarly situated Plaintiffs included in the class, prior to issuing the insurance policy and through its term, that its insurance contracts included PIP benefits as those benefits are described in law. USAA represented that it would pay PIP coverages for a covered person involved in an auto accident, including reasonable fees for medically necessary and appropriate services. USAA promised these benefits within 30-days of proof of the claim. USAA made these promises in an effort to secure insurance contracts and premiums, and to avoid payment of contracted benefits so that USAA could enjoy the profit on unpaid benefits. In fact, USAA's insurance as actually administered does not provide these benefits, and certainly does not provide them within 30-days as promised. The facts underlying this claim are described in Section 4, *supra*.

6.26    USAA further violated §541.051(1) each time its adjuster sought information that was unneeded under the Policy or that USAA already had. Because the terms of the Policy and the law governing the Policy do not require USAA to have ICD-9 codes, CPT codes, federal tax ID numbers, or other myriad data that is not related to the medical necessity and reasonableness of the charge, each request for such data misrepresents that the Policy does make such requirement.

25

6.27   USAA violated §541.060(1) by misrepresenting to Plaintiffs material facts or policy provisions. USAA misrepresented to its insured that USAA would pay medical bills as they were provided to USAA. USAA made these representations to the Named Plaintiffs and the other similarly situated Plaintiffs included in the class, prior to issuing the insurance policy and through its term, and during the claim process.   These representations were knowingly false, as USAA did not intend to pay the benefits within 30-days, and intended to pay much less than reasonable medical fees.  The facts underlying this claim are described in Section 4, *supra*.

6.28   USAA further violated §541.060(1) each time its adjuster sought information that was unneeded under the Policy, or that USAA already had. Because the terms of the Policy and the law governing the Policy do not require USAA to have ICD-9 codes, CPT codes, federal tax ID numbers, or other myriad data that is unrelated to the medical necessity and reasonableness of the charge, each request for such data misrepresents that the Policies do make such requirements.

6.29   USAA further violated §541.060(2) by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of PIP claims once the insurer's liability has become reasonably clear.  The facts underlying this claim as to Larkin are described in Section 4, *supra*.

6.30   USAA violated §541.060(3) by failing to promptly provide the Named Plaintiffs with a reasonable explanation of the basis in the Policies for the insurer's denial of their claims. None of the reasons given by USAA meet the requirements of § 541.060(3)

because they do not refer to actually true facts, or the reasons relate to unknown defenses that are not found within the Policies, or are actually illegal under Texas law.

6.31    USAA violated §541.060(7) by refusing to pay The Named Plaintiffs' PIP claims without conducting a reasonable investigation. In fact, as detailed in the preceding paragraphs, USAA's investigations were pre-textual and unreasonable. For example, USAA did not conduct a reasonable investigation when it failed to consider the information it already had in making a reimbursement decision about Larkin's hospital bills.

6.32    AIS is an agent or contracting adjuster for USAA. Upon information and belief, the acts described in this section were perpetuated or participated in by AIS as an agent or contracting adjuster for USAA. AIS and USAA worked together in adjusting The Named Plaintiffs' PIP claims, with USAA requesting information it already had or did not need to be sent to AIS.

6.33    Defendants' conduct was committed knowingly because Defendants had actual awareness of the falsity, deception or unfairness of their acts and practices made the basis for the Named Plaintiffs' claim for damages under the TEXAS INSURANCE CODE.

6.34    Larkin gave USAA notice as required by §541.154 of the TEXAS INSURANCE CODE.

6.35    Defendants' conduct was producing cause of Plaintiffs' injuries.

## TEXAS INSURANCE CODE §542 ET. SEQ. VIOLATIONS – CLAIM AGAINST USAA

6.36   USAA violated Chapter 542 of the TEXAS INSURANCE CODE because it failed to do the following within the statutorily mandated time of receiving all necessary information:

> (a)   Failing to give proper notice of the acceptance or rejection of part or all of Plaintiffs' claims;
>
> ...
>
> (c)   Failing to accept or deny Plaintiffs' full and entire claim within the statutorily mandated time of receiving all information;
>
> (d)   Failing to pay Plaintiffs' claim without delay; and,
>
> ...
>
> (f)   Failing to include the requisite penalty interest on any and all payments made beyond the statutorily designated time to make payment in full for Plaintiffs' claim.

6.37   As described above, USAA has not given proper notice of the acceptance or rejection of part or all of Larkin's claim.

6.38   Likewise, USAA has failed to accept or deny Larkin's entire claim, thus necessitating this lawsuit.

6.39   USAA has failed to pay the claim without delay. As described at length above, delay is USAA's *modus operandi* in PIP claims. Moreover, it has done so specifically to benefit itself at the expense of its insured.

28

6.40    Nor has USAA paid the penalty interest now owed on the unpaid PIP benefits.

6.41    Such failures constitute violations of the TEXAS INSURANCE CODE §§ 542.055, 542.056, 542.057, and 542.058. As a result of the forgoing violations, Larkin request damages under TEXAS INSURANCE CODE § 542.060.

## BREACH OF THE DUTY OF GOOD FAITH & FAIR DEALING – CLAIM AGAINST USAA

6.42    USAA, as the Named Plaintiffs' insurer, owed the Named Plaintiffs a duty of good faith and fair dealing.

6.43    USAA breached this duty by unreasonably and unfairly delaying and denying payment once liability was reasonably clear. As discussed at length above, USAA had all of the information needed to promptly and fairly resolve Larkin's claim in accordance with the law. It refused to do so. Details of these allegations are described in the foregoing paragraphs, and are incorporated herein by reference. Although it was reasonably clear that Larkin's claims are covered by the Policy, Defendant failed to pay the claims or conduct more than a sham, pretextual investigation with the goal of denying Larkin's PIP claims. As a result of USAA's breaches of the duty of good faith and fair dealing, the Named Plaintiffs have been deprived of their PIP benefits for years.

6.44    Upon information and belief, this same pattern of unreasonable and unfair claim delay and denial is par for the course for USAA. The Named Plaintiffs' counsel is personally aware of other USAA insureds who have had similar frustrations with USAA's PIP claims handling. Upon information and belief, there are numerous attorneys in the state

29

of Texas who represent policyholders against USAA in the PIP context and find that USAA's treatment of the Named Plaintiffs is typical of its treatment of its insureds.

## VII. ATTORNEY'S FEES

7.01   As a result of Defendants' conduct, Plaintiffs have been forced to retain an attorney to seek justice in this Court. Accordingly, Plaintiffs are entitled to recover reasonable and necessary attorney's fees incurred in this action pursuant to TEX. CIV. PRAC. & REM. CODE §38.001, DTPA §17.50(d), and TEXAS INSURANCE CODE §541.152.

## VIII. DAMAGES

8.01   Plaintiffs are entitled to the following:

   (a)   Their wrongfully denied PIP benefits;

   (b)   Penalty interest of 12% under TEX. INS. CODE §1952.157;

   (c)   Additional damages as the trier-of-fact determines under TEX. INS. CODE sections 541 and 542 including but not limited to treble damages and statutory interest;

   (d)   Economic damages;

   (e)   Mental anguish damages;

   (f)   Exemplary damages;

   (g)   Pre-Judgment interest, Post-Judgment Interest and Costs of Court; and,

   (h)   Attorney's fees.

## IX. DISCOVERY

9.01    Pursuant to TEX. R. CIV. P. 194, Defendants are requested to disclose to Plaintiffs, at the office of the undersigned counsel for Plaintiffs, all information or material described in Rule 194.2 within 50 days of service of citation.

## X. JURY DEMAND

10.01  Plaintiffs demand a trial by jury and have tendered the appropriate fee.

## PRAYER

Wherefore Plaintiffs pray that USAA and AIS be cited to appear and answer herein and that upon final hearing they be awarded their just economic damages, actual damages, statutory interest penalties, treble damages, exemplary damages, mental anguish damages, additional damages, pre-judgment and post-judgment interest, attorney's fees, cost of court, and such other relief as they may show themselves entitled. As required by Rule 47(b), TEXAS RULES OF CIVIL PROCEDURE, Plaintiffs' counsel states that the damages sought are in an amount within the jurisdictional limits of this Court. As required by Rule 47(c), TEXAS RULES OF CIVIL PROCEDURE, Plaintiffs' counsel states that Plaintiffs seek monetary relief over $1,000,000. The amount of monetary relief actually awarded, however, will ultimately be determined by a jury.

Respectfully submitted,

**WYLY & COOK, PLLC**

By: /s/ B.T. Wyly
      Brad T. Wyly
      State Bar No. 24042198
      Kelly E. Cook
      State Bar No. 24062675
4101 Washington Ave.
Houston, Texas 77007
(713) 236-8330 Telephone
(713) 863-8502 Telefax
*bwyly@wylycooklaw.com*

**DAVIS LAW GROUP**

By: /s/ J.P. Davis
      Joshua P. Davis
      State Bar No. 24055379
      Jason E. Beesinger
      State Bar No. 24092107
1010 Lamar, Suite 200
Houston, Texas 77002
(713) 337-4100/Phone
(713) 337-4101 /Fax
*josh@thejdfirm.com*
*jason@thejdfirm.com*

**Attorneys for Plaintiffs and the Putative Class**

# Exhibit "1"

Daniel J. Gatti, OSB 73103
Ron L. Sayer, OSB 95191
GATTI, GATTI, MAIER, SAYER,
THAYER, SMITH & ASSOC.
1781 Liberty Street SE
Salem, OR 97302
Tel: (503) 363-3443
Fax: (503) 371-2482
DJGatti@Comcast.net
JHunking@Gattilaw.com
JClifford@Gattilaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARGARET SOUKUP; BRITTNEY BATHURST; AMBER DEMERITT; and SAMANTHA JONES,<br><br>     Plaintiffs,<br><br> v.<br><br>USAA CASUALTY INSURANCE COMPANY, a foreign insurer; UNITED SERVICES AUTOMOBILE ASSOCIATION, a foreign intrainsurance exchange; USAA GENERAL INDEMNITY COMPANY, a foreign insurer; USAA COUNTY MUTUAL INSURANCE CORPORATION, a foreign insurer; GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, a foreign insurer; AUTO INJURY SOLUTIONS, INC., a foreign corporation; DR. CLARK H. WOLF, III, D.C.; and DR. ROSS HART, D.C.<br><br>     Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br>**1. Breach of Contract**<br>**2. Breach of the Covenant of Good Faith**<br>** and Fair Dealing**<br><br>**DEMAND FOR JURY TRIAL** |

   Plaintiffs, by and through their attorneys, bring this action on their own behalf and on

behalf of all other similarly situated military personnel, veterans, and their families, who were

insured through USAA, and its affiliates, and allege as follows:

1          **COMPLAINT**

## NATURE OF THE ACTION

1. This is a class action suit on behalf of active members of the military, honorably discharged veterans, and their families, against defendants USAA Casualty Ins. Co., United Services Automobile Assoc., USAA General Indemnity Co., USAA County Mutual Ins. Corp., Garrison Property and Casualty Ins. Co., (collectively hereinafter "USAA"), Auto Injury Solutions, Inc. ("AIS"), Chiropractor, Clark Wolf, III, and Chiropractor, Ross Hart, seeking relief on behalf of a class of insureds and parties covered by first-party insurance policies issued by USAA.

2. In short, this is a class action against Defendants for their implementation of an undisclosed cost containment scheme which wrongfully deprives U.S. military servicemen, women, and their families, of insurance benefits for medical treatment. USAA represented to U.S. service men and women that USAA would pay for reasonable and necessary medical expenses in the event of an automobile injury, thereby inducing Plaintiffs and other U.S. service men and women, into contracting with USAA for first-party insurance. When Plaintiffs suffered injuries, they sought reasonable and necessary medical care which USAA promised to pay for. However, Plaintiffs' medical treatment was then wrongfully denied by USAA on the basis of fraudulent file reviews in order to deprive Plaintiffs, and those like them, of their medical treatment and thereby save USAA money at the expense of servicemen and women, and their families.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction of the claims asserted herein pursuant to 28 U.S.C. § 1332(d)(2)(A) because the amount in controversy and the claims at issue exceed the sum

**COMPLAINT**

of $5,000,000, exclusive of interests and costs, and is a putative class action in which members of the class are plaintiffs who are citizens of states different from the Defendants' states of citizenship.

4.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Defendants USAA and AIS transact substantial business in this District and maintain their agents or representatives, Chiropractor, Clark H. Wolf, III, and Chiropractor, Ross Hart, in this District. Defendants USAA and AIS regularly and continuously conduct business in interstate commerce that is carried out in substantial part in this District. In addition, many of the acts and transactions giving rise to the claims asserted herein occurred in this District.

## THE PARTIES

## PLAINTIFFS

### (Margaret Soukup)

5.   At all times material hereto, Plaintiff Margaret Soukup was and remains a resident of Clatsop County, Oregon. Margaret Soukup was, and is, an active member of the armed services and was induced into selecting USAA as the insurer for her and her family, based on USAA's representations that USAA was committed to taking care of and supporting members of the armed services and U.S. veterans. USAA touted its commitment to servicing military families and advertised the "exclusive privileges of its auto insurance," noting that, "For those who stood tall for this country and for their families, we stand ready to return the favor." Exhibit 1. During the proposed Class Period, Plaintiff Soukup was insured with USAA for Personal Injury Protection benefits ("PIP"). During the proposed Class Period, Soukup performed all conditions precedent to maintaining her PIP

coverage with USAA, including paying her insurance premiums and performing all other required duties, with the understanding that by doing so USAA would cover her and her family in the event they were injured.

6. Plaintiff Soukup was involved in an automobile collision on September 15, 2009, on Highway 30 in Oregon. As Margaret Soukup slowed and stopped for traffic, she was suddenly rear-ended, jolting her body and vehicle forward, causing her vehicle to then slam into the vehicle in front of her. During these collisions, Margaret's body was whipsawed backwards and forwards, causing injuries to her neck and back. Her vehicle sustained substantial damage during the collisions. In accordance with the terms of her policy, Plaintiff Soukup notified USAA of her accident and submitted a claim for PIP benefits.

7. As a result of the collision, Plaintiff Soukup was injured and sought medical treatment with the understanding that USAA would pay for treatment which was reasonable and necessary.

8. Plaintiff Soukup and her medical providers did what was requested of them by USAA and submitted to USAA bills for treatment of Plaintiff Soukup. USAA, in turn, referred Plaintiff Soukup's claim to Auto Injury Solutions for "file reviews" without Soukup's knowledge and without disclosing that USAA held a relationship with AIS to prepare "file reviews" which would uniformly conclude that medical treatment was not needed. In Soukup's case, AIS prepared 8 sham file reviews, all concluding that treatment should be denied. Four such reviews were purportedly created by a Chiropractor, Clark H. Wolf III, D.C., a chiropractor in Medford, Oregon (Exhibits 2-5); three from a James

Blumenthal, D.O., a doctor in Florida (Exhibits 6-8); and one from Pejman Lavian, M.D., a doctor in Clifton, New Jersey. (Exhibits 9).

9.    USAA and AIS's sham file reviews were then used as the basis for AIS and USAA to wrongfully deny Plaintiff Soukup's PIP benefits. Defendants damaged Soukup by refusing to pay for her reasonable and necessary health care expenses which USAA is contractually obligated to pay. Plaintiff Soukup has been further damaged by Defendants in that their denial of her medical treatment prevents Soukup from making a full recovery from her injuries. Plaintiff Soukup has also been damaged in that she was forced to retain an attorney to pursue her claim against the tortfeasor in her automobile collision claim, and was forced to pay her retained attorney a contingency fee which included a fee on the sums recovered for Plaintiff Soukup's outstanding medical bills – medical bills which should have been paid for by USAA had USAA not wrongfully denied her PIP benefits.

### (Brittney Bathurst)

10.    At all times material hereto, Plaintiff Brittney Bathurst was a resident of Chisago County, Minnesota, and is currently a resident of Maricopa County, Arizona. During the proposed Class Period, Plaintiff Bathurst was insured with USAA for PIP benefits under her mother's policy. Bathurst's mother, Susan Bathurst, was a veteran of the U.S. armed services and Susan Bathurst entered the U.S. Army Reserves in 1981, retiring in 2005 after serving in operations such as Desert Storm, Enduring Freedom (Iraq War) and receiving decorations such as the Air Force Achievement Award, National Defense Service Medal and Army Overseas Service Ribbon. She was honorably discharged. As a result of her military service, Susan Bathurst was told that she and her family qualified for

5                              **COMPLAINT**

USAA insurance and Bathurst was then induced into contracting with USAA for automobile insurance based on USAA's representations that it was committed to serving U.S. veterans. During the proposed Class Period, Plaintiff Bathurst and her mother performed all conditions precedent to maintaining her PIP coverage with USAA, including paying all premiums and otherwise performing all required duties, with the understanding that by doing so, reasonable and necessary health care expenses would be paid by USAA in the event of an injury suffered in an automobile collision.

11. At age 17, plaintiff Brittney Bathurst was involved in an automobile collision on June 30, 2007, when she was traveling as a passenger and was "T-boned" by a jeep traveling at a very high rate of speed, totaling the vehicle in which Brittney was riding. Airlife, police, fire, and other emergency responders were deployed to the scene of the near death collision. Ultimately Bathurst was taken to a nearby hospital by ambulance. The accident occurred in Chisago City, Minnesota. In accordance with the terms of her policy, Plaintiff Bathurst notified USAA of her accident and submitted a claim for PIP benefits.

12. As a result of the collision, Plaintiff Bathurst was injured and sought reasonable and necessary health care based on the representations USAA made to her mother that as a military service woman, she and her family members, including Plaintiff Bathurst, would be covered in the event of an accident and reasonable and necessary health care expenses would be paid for.

13. Plaintiff's medical providers submitted bills for their treatment of Plaintiff Bathurst to USAA. USAA, in turn, referred Plaintiff Bathurst's claim to Auto Injury Solutions for a

"file review," without Bathurst's knowledge and without disclosing that USAA held a relationship with AIS to prepare "file reviews" which would uniformly conclude that treatment should be denied. AIS prepared a sham file review, purportedly created by a Leslie Kancir, an acupuncturist located in Lakewood, Colorado (Exhibit 10).

14. In Exhibit 10, one will readily note that Kancir's signature is an "electronic" signature. Note also that the report states in no uncertain terms that "A Physician Review has been completed." Said statement is absolutely false at the time of writing the review. See also the so-called criteria/sources referenced as justification for the ultimate conclusion that the reimbursement of health care services should be denied. The authorities are immaterial and not reliable with reference to the individualized injuries and subsequent care needed by Brittney Bathurst. Compare Exhibits 11–13, which are all purportedly reviews written and signed by the one and same Leslie Kancir, an acupuncturist from Colorado.

15. In the additional Exhibits 11–13, victim reviews are again "electronically" signed by acupuncturist Leslie Kancir, each contain the false statement that "A Physician Review has been completed," and each rely on so-called source or criteria references that are immaterial and not reliable as to the individual injuries suffered by additional victims in separate collisions, on separate dates. Each review appears to be an authentic, individualized medical review when clearly each is not.

16. AIS's sham file review of Brittney Bathurst was used as the basis for AIS and USAA to deny Plaintiff Bathurst's acupuncturist care which was subsequently incurred in Arizona. Defendants damaged Bathurst by refusing to pay for her reasonable and necessary

expenses which USAA was contractually obligated to pay. Plaintiff Bathurst has been further damaged by Defendants in that Bathurst must incur and pay for health care expenses out of her own resources, which, if not done, will prevent Bathurst from making a full recovery from her injuries.

### (Amber DeMerritt)

17. At all times material hereto, Plaintiff Amber DeMerritt was and remains a resident of Clackamas County, Oregon. During the proposed Class Period, Plaintiff DeMerritt's husband was in active military service, serving in places such as Texas and Kuwait. As a result of her marriage to an active serviceman, DeMerritt was induced into being insured with USAA for PIP benefits, based upon USAA's representations that it would pay the medical bills of U.S. servicemen and their families. During the proposed Class Period, Plaintiff DeMerritt performed all conditions precedent to maintaining her PIP coverage with USAA, including paying all premiums and performing other required duties, with the understanding that by doing so USAA would pay the medical bills of DeMerritt in the event she was injured in an automobile accident.

18. Plaintiff DeMerritt was involved in a serious automobile collision on October 25, 2010, on Dryland Road in Clackamas County, Oregon. Plaintiff DeMerritt slowed for a passing vehicle when she was suddenly rear-ended, forcing her vehicle into a spin during which it was impacted yet again, while the other driver's vehicle was caused to rollover. *See* Exhibits 14-15 depicting vehicle damage. In accordance with the terms of her policy, Plaintiff DeMerritt notified USAA of her accident and submitted a claim for benefits incurred for injuries sustained as a result of a collision.

COMPLAINT

19. As result of the collision, Plaintiff DeMerritt was injured and sought medical treatment based on the representations USAA made that she would be covered in the event of an accident and would be taken care of.

20. Plaintiff's medical providers submitted bills for their treatment of Plaintiff DeMerritt to USAA. USAA, in turn, referred Plaintiff DeMerritt's claim to Auto Injury Solutions for "file reviews" without DeMerritt's knowledge and without disclosing that USAA held a relationship with AIS to prepare "file reviews" which would uniformly conclude that treatment should be denied. USAA and AIS prepared at least four sham file review Reports, purportedly created by a George D. Sage, a chiropractor in Decatur, Georgia (Exhibits 16-19).

21. AIS's sham file reviews were used as the basis for AIS and USAA denying Plaintiff DeMerritt's PIP claim. Defendants damaged DeMerritt by refusing to pay for her reasonable and necessary medical expenses which USAA is contractually obligated to pay. Plaintiff DeMerritt has been further damaged by defendants in that their denial of her medical treatment prevents her from making a full recovery from her injuries.

### (Samantha Jones)

22. At all times material hereto, Plaintiff Samantha Jones resided in King County, Washington, and currently is a resident of Washington County, Oregon. During the proposed Class Period, Plaintiff Jones was insured with USAA for PIP benefits because her step-father was a serviceman within the U.S. military. During the proposed Class Period, Plaintiff Jones performed all conditions precedent to maintaining her PIP coverage with USAA, including paying all premiums and performing other required

duties, with the understanding that by doing so USAA would in turn take care of Jones in the event of an accident.

23.     Plaintiff Jones was involved in an automobile collision occurring on February 10, 2009, in Renton, Washington. Plaintiff Jones's vehicle was struck by a driver who failed to stop at a stop sign. In accordance with the terms of her policy, Plaintiff Jones notified USAA of her accident and submitted a claim for PIP benefits.

24.     As result of the collision, Plaintiff Jones was injured and sought medical treatment based on the representations USAA made that she would be covered in the event of an accident and would be taken care of.

25.     Plaintiff's medical providers submitted bills for their treatment of Plaintiff Jones to USAA. USAA, in turn, referred Plaintiff Jones's claim to Auto Injury Solutions for "file reviews" without Jones's knowledge and without disclosing that USAA held a relationship with AIS to prepare "file reviews" which would uniformly conclude that treatment should be denied. AIS prepared nine sham file reviews, five of which were purportedly created by Ross, Hart, D.C., a chiropractor in Springfield, Oregon (Exhibits 20-24); three from John T. Murphy, D.C. (Exhibits 25-27); and one from Clark H. Wolf III, D.C., a chiropractor in Medford, Oregon (Exhibit 28).

26.     AIS's sham file reviews were used as the basis for AIS and USAA denying Plaintiff Jones's PIP claim. Defendants damaged Jones by refusing to pay for her reasonable and necessary medical expenses which USAA is contractually obligated to pay. Plaintiff Jones has been further damaged by Defendants in that their refusal to pay her reasonable and necessary medical expenses prevented her from making a full recovery from her

injuries. Plaintiff Jones has also been damaged in that she was forced to retain an attorney to pursue her claim against the tortfeasor, and was forced to pay her retained attorney a contingency fee which included a fee on the sums recovered for Plaintiff Jones's outstanding medical bills – medical bills which should have been paid for by USAA had it not wrongfully denied her PIP benefits.

## DEFENDANTS

27. At all times material hereto, Defendant USAA Casualty Insurance Company was and is a foreign insurer licensed to transact insurance business in the state of Oregon and other states.

28. At all times material hereto, Defendant United Services Automobile Association was and is a reciprocal interinsurance exchange organized under the laws of Texas, and transacts business in the state of Oregon and other states.

29. At all times material hereto, Defendant USAA General Indemnity Company was and is a foreign insurer organized under the laws of Texas, and licensed to transact insurance business in the state of Oregon and other states.

30. At all times material hereto, Defendant USAA County Mutual Insurance Company was and is a foreign insurer organized under the laws of Texas, and transacts business in the state of Oregon and other states.

31. At all times material hereto, Defendant Garrison Property and Casualty Insurance Company was and is a foreign insurer organized under the laws of Texas, and licensed to transact insurance business in the state of Oregon and other states.

32. The foregoing defendant entities are hereinafter referred to collectively as "USAA."

**COMPLAINT**

33.  At all times material hereto, upon information and belief, Auto Injury Solutions, Inc., ("AIS") was and is a foreign corporation, organized under the laws of Alabama, and conducting business in Oregon and other states.

34.  At all times material hereto, upon information and belief, Clark H. Wolf, III, is a chiropractor licensed in the State of Oregon, and practicing or residing in Medford, Oregon. Wolf performs countless file reviews for USAA and AIS which affect insureds all over Oregon and other states in the nation.

35.  At all times material hereto, upon information and belief, Ross Hart, is a chiropractor licensed in the State of Oregon, and practicing or residing in Albany and Bend, Oregon. Dr. Wolf performs countless file reviews for USAA and AIS which affect insureds all over Oregon and other states in the nation.

### CLASS ACTION ALLEGATIONS

36.  Defendant USAA offered and sold a form of first-party medical coverage that provides payment to covered persons for "reasonable and necessary" medical expenses incurred by the insured for bodily injury(ies) resulting from a covered automobile accident. This coverage is commonly referred to as Personal Injury Protection ("PIP") and/or Medical Payments ("Med Pay") coverage. PIP and Med Pay is commonly referred to as "no-fault coverage." *See* Exhibits 29-30 as example policies sold by USAA.

37.  Defendant USAA did offer PIP and/or Med Pay coverage to its insureds in states across the country, including Oregon, Washington, Arizona, Minnesota, and other states in which Defendants conduct business.

*///*

12                                    **COMPLAINT**

38. Plaintiffs, and all others similarly situated, contracted for and paid premiums to maintain PIP and/or Med Pay coverage with USAA, with the understanding that USAA would "be there to take care" of Plaintiffs. Exhibit 31. Plaintiffs were induced into contracting with USAA because of their status as active or honorably discharged members of the U.S. armed services, or by being a family member of such a service member.

39. Under the terms of the policies, defendant USAA assumed the responsibility and obligation to pay all reasonable and necessary medical expenses incurred for the treatment of injuries sustained in an accident.

40. During the proposed Class Period, USAA adopted an undisclosed and wrongful cost containment program through which USAA seeks to arbitrarily reduce PIP and/or Med Pay benefits for claims submitted by its insureds. This cost containment program operates to uniformly reduce or deny medical claims which are incurred as a result of automobile collisions causing injuries for which insureds seek out reasonable and necessary care.

41. USAA contracted with an apparent third party provider, Auto Injury Solutions, Inc., to assist USAA in implementing and carrying out its fraudulent cost containment program under the guise of AIS providing "independent" and impartial medical review services. In reality, AIS serves at the direction of USAA, and/or as the alter ego of USAA, in that AIS's services are not rendered independently and are focused on generating false and misleading reports in order to save USAA millions of dollars at the expense of military personnel and their family members who have been injured in automobile collisions and whose bills were reasonable and necessarily incurred.

**COMPLAINT**

42.     USAA has entered into an agreement in which its PIP and/or Med Pay claims are sent to

        AIS for review and/or claims handling. AIS serves as USAA's agent. Insureds and their

        health providers are instructed to send information, including appeals, to AIS's address in

        Daphne, Alabama, and not to USAA claims handling locations scattered throughout the

        United States.

43.     The purported medical review services provided by AIS are a sham. The records review

        reports ("Reports") generated by Auto Injury Solutions are purportedly created by

        physicians whom AIS contracts with to provide "independent" medical record review

        services in order to give the appearance of legitimacy, when, in fact, such appearance is

        false and fraudulent.

44.     The Reports purportedly created by defendants Clark H. Wolf and Ross Hart are sham,

        contain false information, and fail to comply with applicable Oregon statutes,

        administrative rules, and practice and utilization guidelines which are adopted and

        controlling the standard of care in Oregon..

45.     Defendants create the Reports by utilizing template forms. Defendants utilize an

        electronic signature stamp on each Report in order to give the false impression that a

        physician created and approved each Report. In reality, each report generated is

        substantially the same in reaching the uniform conclusion that benefits should be denied.

        These reports utilize identical and the same conclusionary language (including

        typographical errors) despite the impression that each report is supposedly created for

        different claimants. Furthermore, for several Plaintiffs and Class members, the reports

        are cut and paste papers, merely duplicating exactly what was said in other reports

14                                              **COMPLAINT**

generated for the same insured. Compare Exhibits 6-8 and 32 which were purportedly created by Dr. James Blumenthal, D.O. Compare Exhibits 20-24 and 33 which were purportedly created by Ross Hart, D.C. Compare Exhibits 2-5, 34-37 which were purportedly created by Clark Wolf III, D.C.

46.    The Reports prepared by AIS uniformly deny that the treatment received by the insureds is reasonable and necessary. These Reports are without basis and are not supported by proper sources, criteria, or medical authority. The Reports are fraudulent and are designed to save defendants substantial money for health expenses already contracted and paid for by servicemen and women, veterans and their families. Because of defendants' phony reviews, plaintiffs and the class members' medical care was affected and denied, and such claims were generally in the range of $500 to $10,000 per collision and claim. The Reports are inconsistent with, and unsupported by the very medical records which they purport to review. The Reports uniformly recommend denial of submitted claims without reasonable, individualized medical basis and without individualized appropriate investigation into, or consideration of, the reasonableness or necessity of the insureds' medical treatment.

47.    Defendants maintain a list or database of purported "authorities" to cite when generating file and peer review reports to give the appearance that the Reports' conclusions are medically supported.

48.    Defendants deny claims for PIP and/or Med Pay benefits on the Reports. Defendants do not conduct a separate investigation, review, or otherwise seek to confirm the opinions

15                    **COMPLAINT**

expressed in the Reports. Defendants uniformly deny claims submitted to AIS and
subjected to an AIS Report.

49. USAA's denial of PIP and/or Med Pay claims is based upon fraudulent and sham records
review reports generated by AIS at USAA's direction, or with USAA's knowledge and
consent. USAA knew of AIS's fraudulent system of generating reports and encouraged
it, knowing that USAA would gain financially if the reports denied care, and disregarding
that it was breaching its promise of serving the men and women of the military who
served this nation.

50. Defendants' denial of PIP and/or Med Pay claims are not based upon legitimate
determinations of reasonableness or necessary care. As a result, USAA's claims handling
and denials do not abide by its own policy terms.

51. Defendants' aforesaid utilization of its undisclosed cost containment program to reduce
first-party medical benefits is presumptively unreasonable and in breach of USAA's
obligations to pay all reasonable and necessary medical expenses incurred by covered
persons.

52. Any medical expenses not paid under defendant USAA's PIP and/or Med Pay coverages
by reason of its undisclosed cost containment program are, *ipso facto*, presumptively
reasonable and necessary, valid, and are owed by USAA to plaintiffs and all others
similarly situated under the terms of its contract with its insureds.

53. Defendants' actions in utilizing its cost containment program to unilaterally reduce or
deny health care expenses submitted for payment under PIP and/or Med Pay coverage,
constitute a presumptive breach of USAA's implied duty of good faith and fair dealing,

including its obligation to conduct a full and fair evaluation of each claim and to not unreasonably deny or withhold benefits. The Reports and USAA's denials contain nothing more than language that the medical treatment is not reasonable and not necessary. This determination is unsupported by USAA and AIS. Furthermore, Defendants' denials rely upon opinions rendered by physicians who are not of the same speciality, license, or certification as the treating physicians, whose records they are purportedly reviewing.

## CLASS DEFINITIONS

54.    There exists a class of persons, who are insureds of defendant USAA with PIP and/or Med Pay coverage. Such insureds are "members" of USAA, who have "honorably served" in branches of the U.S. military, or are covered by a policy as a result of a family member who served.

55.    This class ("Class") is, or can be initially, defined as follows:

    a.    All persons who, within applicable statutory limitations periods, were injured in automobile accidents while a driver or passenger in an automobile insured by USAA, or who were members/insureds of USAA and whose policy covered them; and

    b.    The insurance policy provided by USAA covered MedPay, PIP, First Party Benefits, Medical Expense Benefits, Automobile Death and Disability, or any other first-party medical coverage (collectively referred to as "Medpay"); and

    c.    Who submitted claims for Medpay benefits within January 1, 2005, through the present, and

    d.    Who had bills for health care expenses submitted to review by Auto Injury Solutions, or its parents, subsidiaries or affiliates, which recommended denial of payment and/or partial denial of payment, based upon:

        i.    A written AIS "Physician Review," and

        ii.    USAA denied payment of all, or a portion, of benefits based upon AIS's recommendation.

56.    In addition to the foregoing national Class, there is a subclass of Oregon insureds

("Oregon Subclass") which may be defined as follows:

a.  All persons who, within the past six years, were injured in automobile accidents while a driver or passenger in an automobile insured by USAA under an Oregon Policy, or who were members/insureds of USAA under an Oregon Policy, and whose PIP policy covered them; and

b.  Who submitted claims for PIP benefits within January 1, 2005, through the present, and

c.  Who had bills for health care expenses submitted to review by Auto Injury Solutions, or its parents, subsidiaries or affiliates, which recommended denial of payment and/or partial denial of payment, based upon:

    i.  A written AIS "Physician Review," and

    ii. USAA denied payment of all, or a portion, of benefits based upon AIS's recommendation.

57. This action is brought and may properly be maintained as a class action.

58. The proposed Class and Oregon Subclass is so numerous that the individual joinder of all members is impracticable under the circumstances of this case. While the exact number of class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe that the proposed Class and Oregon Subclass include hundreds, if not thousands of members throughout the United States.

59. Class treatment is appropriate in this case because (1) it involves the legality of uniform policies and practices that defendants applied to all members of the proposed Classes; and (2) there are numerous common questions of law and fact that exist as to all members of the proposed Classes which predominate over any questions that affect only individual members of the proposed Class and Oregon Subclass. These common legal or factual questions include:

a.  Whether the file reviews created by AIS are in fact individually written by appropriate physicians, or by the physicians who purportedly sign them.

18                          **COMPLAINT**

b. Whether the claims denials by USAA and AIS are the product of false and inappropriate claims handling and/or investigative techniques.

c. Whether USAA unreasonably put its own interests ahead of that of its insureds.

d. The meaning of the policy's terms "reasonable and necessary."

e. Whether USAA's denial of PIP benefits constitutes a breach of contract.

f. Whether USAA's breach of contract met USAA's obligation of good faith and fair dealing.

g. For the Oregon Subclass, whether USAA has breached its contract with Oregon policyholders by basing their denials on File Reviews which contradict the applicable practice and utilization guidelines for treating physicians.

60. Plaintiffs' claims are typical of the proposed Class and Oregon Subclass members' claims. Plaintiffs and the Classes purchased or were covered by PIP and/or Med Pay insurance offered by USAA. Plaintiffs and the Classes were physically injured in covered accidents or events, and sought medical treatment as a result. Plaintiffs and the Classes sustained injuries arising out of Defendants' common course of conduct of denying their PIP or MedPay claims based on false Reports. Plaintiffs are, therefore, no different in any material respect from any other Class or Subclass member, and the relief sought is common to the Class and Oregon Subclass.

61. Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class and Oregon Subclass. Plaintiffs are adequate representatives of the Classes and have no conflict or adverse interest to the proposed Classes.

///

19                                    **COMPLAINT**

62. All claims on behalf of the proposed Class and Oregon Subclass, including the claims of the Plaintiffs, arise from the same scheme and practice and are based on the same legal theories. The issues that affect Plaintiffs and the proposed Classes predominate over those that affect only individual members of the proposed Class and Oregon Subclass.

63. A class action is a superior means for a fair and efficient adjudication of the matters at issue because individual joinder of all members of the proposed Class and Oregon Subclass is impracticable. Additionally, the damages suffered by any individual member of the proposed Classes may be relatively small, making the burden and expense of individual litigation difficult or prohibitive. Furthermore, the nature of the alleged cost containment scheme orchestrated by the defendants is such that individual class members may be unaware of the fraud and thus unaware that their legal rights have been violated. Moreover, individual adjudication of claims of the members of the proposed Classes presents the possibility of inconsistent and contradictory judgments.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Breach of Contract)

64. Plaintiffs hereby repeat, re-allege, and restate the foregoing as if fully set forth herein.

65. The policies of insurance between defendant USAA and Plaintiffs, either directly or through proper assignment, constitute lawfully binding contracts.

66. Plaintiffs have paid their premiums to defendant USAA in order to maintain PIP and/or Med Pay coverage, and have otherwise satisfied all other conditions precedent.

///

20 **COMPLAINT**

67. Plaintiffs have been injured in a covered event and have demanded performance under the contracts. Defendant USAA's failure to perform as required under the contract constitute a breach thereof.

68. Defendants USAA, AIS, Dr. Clark Wolf, III, and Dr. Ross Hart, engaged in the same course of conduct in applying the cost containment scheme to Plaintiffs, and members of the Class and Oregon Subclass, and did breach the contract with Plaintiffs, and members of the Class and Oregon Subclass, by denying payment of PIP and/or Med Pay claims without regard or determination of the reasonableness or necessity of the treatment received.

69. For the Oregon Subclass, Defendants USAA, AIS, Dr. Clark Wolf, III, and Dr. Ross Hart denied PIP benefits without regard to Oregon statute, Oregon Administrative Rules, and Oregon practice and utilization guidelines, and therefore, Defendants' denials are presumptively unreasonable and constitute a breach of contract.

70. Plaintiffs have sustained actual damages as a result of defendants USAA and AIS's breach.

71. Plaintiffs are entitled to reasonable attorneys' fees under O.R.S. 742.061 and other applicable states' statutes.

## SECOND CAUSE OF ACTION

### (Breach of Covenant of Good Faith and Fair Dealing ("Bad Faith"))

72. Plaintiffs Brittney Bathurst and Samantha Jones hereby repeat, re-allege, and restate the foregoing as if fully set forth herein.

///

**COMPLAINT**

73. Defendants USAA, AIS, and Dr. Ross Hart, at all relevant times, owed and continue to owe Plaintiffs, and all others similarly situated, an implied duty of good faith and fair dealing.

74. Defendants USAA, AIS, and Dr. Ross Hart's actions were in breach of the duty of good faith and fair dealing, and therefore constitute "bad faith."

75. Defendants USAA, AIS, and Dr. Ross Hart's bad faith conduct consists of, but is not limited to:

    a. Failing to fully, fairly and promptly investigate Plaintiffs' claims;

    b. Unreasonably denying and/or withholding benefits under the policy;

    c. Uniformly misconstruing policy language against Plaintiffs;

    d. Wrongfully reducing or denying benefits due and payable under the policy;

    e. Creating unreasonable burdens for payment and benefits; and

    f. Engaging in a pattern and practice of similar bad faith claims handling practices.

    g. Violating applicable state statutes and administrative rules, including, but not limited to RCW 48.30.015 and WAC 284-30-330, and their equivalents in other states, and by engaging in unfair practices by violating WAC 284-30-395.

76. Plaintiffs and the members of the proposed Class have sustained actual damages as a result of Defendants' bad faith conduct.

77. Defendants' actions entitle Plaintiffs Bathurst and Jones, and others similarly situated, to payment or reimbursement of legally incurred but unpaid medical expenses.

///

///

22           **COMPLAINT**

78. Defendants' actions further entitle Plaintiffs Bathurst and Jones, and others similarly situated, to an award of general and consequential damages for Defendants' bad faith conduct.

79. Defendants' actions were undertaken with ill intent and/or in conscious disregard for the harm to be caused to the Plaintiffs and others similarly situated.

80. Defendants' actions, for the reasons afore-mentioned, further entitle Plaintiffs Bathurst and Jones, and others similarly situated to an award of punitive damages.

81. Plaintiffs are also entitled to their reasonable attorneys' fees pursuant to applicable states' statutes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class, request judgment and relief on all causes of action as follow:

AS TO THE FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT:

a. An order certifying that this action is properly brought and may be maintained as a Class Action under FRCP 23, that Plaintiffs be appointed as Class Representatives, and Plaintiffs' counsel be appointed Class Counsel.

b. A judgment entered against Defendants, jointly and severally, and in favor of Plaintiffs and each member of the Class they represent, determining that Defendants have breached their contracts with Plaintiffs and the proposed Class and Oregon Subclass;

c. For an award of the actual damages sustained thereby;

///

23                                    **COMPLAINT**

d. For Plaintiffs' reasonable fees and costs, pursuant to ORS 742.061 and other states' applicable law; and

e. For such additional and further relief as the court deems proper.

AS TO THE SECOND CAUSE OF ACTION FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING ("BAD FAITH"):

a. An order certifying that this action is properly brought and may be maintained as a Class Action under FRCP 23, that Plaintiffs Bathurst and Jones be appointed as Class Representatives, and Plaintiffs' counsel be appointed Class Counsel.

b. A judgment entered against Defendants, jointly and severally, and in favor of Plaintiffs and each member of the Class they represent, determining that Defendants have breached their covenant of good faith and fair dealing with Plaintiffs Bathurst and Jones, and the proposed Class;

c. For an award of the actual damages sustained thereby;

d. For an award of general compensatory damages sustained thereby;

e. For an award of punitive damages sustained thereby;

f. For Plaintiffs' reasonable fees and costs, pursuant to R.C.W. § 48.30.015 and other states' applicable laws; and

g. For such additional and further relief as the court deems proper.

///

///

///

24   **COMPLAINT**

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues which may be so tried.

DATED this ___ day of May, 2011.

_____

Daniel J. Gatti, OSB 731036
Ron L. Sayer, OSB 95191
GATTI, GATTI, MAIER, SAYER,
THAYER, SMITH & ASSOC.
1781 Liberty Street SE
Salem, OR 97302
Tel: (503) 363-3443
Fax: (503) 371-2482
DJGatti@Comcast.net
JHunking@Gattilaw.com
JClifford@Gattilaw.com

Counsel for Plaintiffs

**COMPLAINT**

# Exhibit "2"

# USAA sued over claims

BY PATRICK DANNER
PDANNER@EXPRESS-NEWS.NET
: MAY 12, 2011 : Updated: May 12, 2011 7:53pm

USAA once again is defending itself against charges it utilizes a "cost containment program" to improperly reduce or deny medical payouts to insurance customers injured in auto accidents.

Comments 0      E-mail      Print

Recommend   8      Tweet   3      0

### Recent Headlines

High court declines review of Facebook settlement

Twitter boosts IPO price range

Greece's debt inspectors back amid austerity anger

Argentina's Grupo Clarín would split into 6 parts

BlackBerry abandons sale process, CEO out

The latest claims against the San Antonio financial and insurance company were made in a federal lawsuit filed this week in Oregon.

The lawsuit, which seeks national class-action certification, charges that USAA uses an outside auditor to assess claims and to "uniformly conclude that medical treatment was not needed."

USAA denies the allegations.

USAA previously settled two class-action lawsuits that accused it of using flawed data to arbitrarily deny a portion of the medical benefits for injured customers who have personal-injury protection or other medical-payments coverage on their USAA auto-insurance policies.

One of those cases, filed in Arizona, was settled last summer. Claims are still being processed, so the amount to be paid out under the settlement hasn't been determined.

The other case, filed in Illinois was settled in 2005. Lawyers for the plaintiffs valued the settlement on their website at $35 million, a figure USAA spokesman Paul Berry called "probably wildly" inflated.

USAA settled the two cases because it was the "right thing to do for our membership," Berry said. He noted both courts endorsed USAA's bill-review practices.

"We pay all reasonable, necessary and accident-related bills," Berry said. "That doesn't mean we pay all bills. If you had injuries or you received some treatment that had nothing to do with (an auto) accident, we're not going to pay those bills."

USAA relies on Alabama-based Auto Injury Solutions Inc. to help review medical bills to determine whether they are reasonable and necessary and to weed out duplicative and fraudulent claims. Bills deemed suspicious are reviewed by a doctor or other health-care professionals, Berry said. Even when one of its doctors concludes the medical care wasn't necessary, the bill still goes through several other reviews, he said.

USAA also can choose to override any instance where a bill is rejected, Berry said.

In the latest Oregon lawsuit, four unrelated USAA customers in separate accidents allege the medical reviews were a "sham."

According to the suit, the reports generated by Auto Injury Solutions and the doctors are "template forms" that include an "electronic signature to give the false impression that a physician created and approved each report."

"In reality each report generated is substantially the same in reaching the uniform conclusion that benefits should be denied. These reports utilize identical and the same conclusionary language," the lawsuit contends.

USAA has about 8 million customers, comprised of current and former members of the military and their families. It routinely scores high in customer satisfaction surveys.

"We work for our members, and our members own this company," Berry said.

Daniel Gatti, the Salem, Ore., lawyer who filed the latest lawsuit against USAA and who has been suing insurance companies for 37 years, said USAA was once one of the most honorable insurers in the country. But now, he said, USAA is more focused on reining in costs.

"It's designed to save USAA money at the expense of our soldiers," Gatti said.

Berry disputed that, saying USAA paid $1.3 billion in dividends to customers based on its financial performance last year.

**The End of the "Made-in-China" Era**

The 21st century industrial revolution has already begun. All because of an incredible invention that's made in America.

Business Insider calls it "the next trillion dollar industry." The Economist compares its impact to the steam engine and the printing press. And technology experts -- like the guys who brought you the BMW 3-series, the F-35 fighter jet, and Amazon.com -- think it could be "bigger than the internet."

A new investment video reveals the impossible (but real) technology that could make you impossibly rich. Watch it now, before the skeptics on Wall Street wise up and start looking for their piece of the action. Just enter your email:

Enter email address...          Click Here, It's Free!                                          Terms And Conditions
                                                                                               Sponsored By The Motley Fool

# Exhibit "3"

# Circuit Court For The 13th Judicial Circuit In And For Hillsborough County, Florida

## If you provided health care treatment or services to people insured by United Services Automobile Association, USAA Casualty Insurance Company, USAA General Indemnity Company, or Garrison Property & Casualty Insurance Company (collectively referred to as "USAA") on or after January 1, 2008, this class action notice may affect your rights.

### *A court authorized this notice. This is not a solicitation from a lawyer.*

- A health care provider has filed a class action lawsuit alleging that USAA did not fully pay personal injury protection benefits owed to Florida health care providers.

- A Florida Court has preliminarily approved a statewide class action settlement on behalf of health care service providers in Florida who provided treatment or services to USAA's insureds since January 1, 2008.

- The class action settlement will provide monetary relief to health care providers who timely respond. Your rights may be affected, and you may have a choice to make now:

| | |
|---|---|
| **REQUEST PAYMENT** | You may make a claim in the class action for a monetary payment within the time frame allowed. If you choose to make such a claim, you will give up any rights to sue USAA on your own about the same legal claims in this lawsuit. |
| **ASK TO BE EXCLUDED** | If you ask to be excluded from the class action, you will receive no payment under the settlement agreement, and you will keep any rights to sue USAA on your own about the same legal claims in this lawsuit. |
| **DO NOTHING** | By doing nothing, you will not receive any monetary payment, and you will give up any rights to sue USAA on your own about the same legal claims in this lawsuit. |

- Your rights and options – and the deadlines to exercise them – are explained in this notice. To ask to be excluded, you must act before **January 8, 2013.**

**BASIC INFORMATION**.............................................................................................................**PAGE 3**

    1.    Why did I get this notice package?

    2.    What is this lawsuit about?

    3.    What is a class action?

    4.    Why is there a settlement?

**THE CLAIMS IN THE LAWSUIT**.............................................................................................**PAGE 3**

    5.    What does the lawsuit complain about?

    6.    How does USAA respond to the complaint?

    7.    What does the settlement provide?

**WHO IS IN THE CLASS**............................................................................................................**PAGE 4**

    8.    Am I a Class Member?

    9.    I'm still not sure if I am included.

**YOUR RIGHTS AND OPTIONS**.................................................................................................**PAGE 4**

    10.    How can I make a claim for a monetary payment?

    11.    What happens if I do nothing at all?

    12.    What happens if I exclude myself?

    13.    How do I ask to be excluded?

    14.    How do I tell the Court that I don't like the Settlement?

    15.    What is the difference between objecting and excluding?

**THE LAWYERS REPRESENTING YOU**.....................................................................................**PAGE 6**

    16.    Do I have a lawyer in this case?

    17.    Should I get my own lawyer?

    18.    How will the lawyers be paid?

**THE FAIRNESS HEARING**.........................................................................................................**PAGE 6**

    19.    When and where will the Court decide whether to approve the settlement?

    20.    Do I have to come to the hearing?

    21.    May I speak at the hearing?

**GETTING MORE INFORMATION**.............................................................................................**PAGE 6**

    22.    Are more details available?

## 1. Why did I get this notice package?

USAA's records show that since January 1, 2008, you may have provided treatment or services to injured people covered under automobile insurance policies issued by USAA. The Court authorized the parties to send you this notice to inform you about a proposed settlement of a class action lawsuit and your options. The Court has not yet decided whether to approve the settlement as final. If the Court finally approves the settlement, after objections and appeals (if any) are resolved, a settlement administrator will make the monetary payments outlined in the settlement agreement.

This package explains the lawsuit, the settlement, what payments may be available, who is eligible for them, and how to make a claim for a payment under the settlement.

This lawsuit is pending in front of Judge Michelle Sisco of the Circuit Court of the 13th Judicial Circuit, Hillsborough County, Florida. The lawsuit is known as *MRI Associates of St. Pete, Inc., d/b/a Saint Pete MRI, v. USAA,* Case No. 10-CA-016785. The person who sued is called the Plaintiff. The companies being sued (USAA) are called the Defendants.

## 2. What is this lawsuit about?

The lawsuit is about whether USAA improperly failed to make full payment of personal injury protection ("PIP") benefits in an amount allowable under chapter 627 of the Florida Statutes. Plaintiff alleges that USAA improperly applied the fee schedules in Fla. Stat. § 627.736(5)(a)2.a through f (2007-2011) by paying the fee schedule amount under policies that did not set out the fee schedule provisions as the method for determining the amount of PIP benefits owed. USAA disputes these allegations and denies that it has acted improperly in connection with these PIP claims.

## 3. What is a class action?

In a class action, a Class Representative, in this case, MRI Associates of St. Pete, Inc., d/b/a Saint Pete MRI, sues on behalf of people who have similar claims. All these people, called Class Members, make up a Class. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. For purposes of the settlement, the parties are requesting the Court to conditionally certify the lawsuit as a class action. The Court will make a final determination as to class certification at a Fairness Hearing.

## 4. Why is there a settlement?

The Court did not decide in favor of the Plaintiff or USAA, and USAA did not admit any wrongdoing or legal liability. Instead, the parties agreed to a settlement. That way, they avoid the risk and expense of continued litigation, and the Plaintiff and Class Members who follow the procedures outlined in this Notice and qualify under the terms of the settlement may receive additional payment for services they provided to USAA's insureds. The Class Representative and the attorneys for the proposed Class believe the settlement is in the best interest of the Class Members.

## THE CLAIMS IN THE LAWSUIT

## 5. What does the lawsuit complain about?

In general, the lawsuit alleges that USAA improperly underpaid PIP claims submitted by the Plaintiff and the Class Members by paying amounts provided by the fee schedules in Fla. Stat. § 627.736(5)(a)2.a through f (2007-2011) under policies that did not set out the fee schedule provisions as the method for determining the amount of PIP benefits owed. Plaintiff alleges these payments violated Chapter 627 of the Florida Statutes.

## 6. How does USAA respond to the Complaint?

· USAA denies the claims and allegations in the lawsuit. USAA denies it did anything wrong, and contends that its payments to PIP providers since January 1, 2008 were correct and in accordance with the PIP statute and the insurance policies issued by USAA.

## 7. What does the settlement provide?

The settlement provides for a monetary payment. To be eligible for a payment, you must timely submit a properly completed claim form (see attached form) in order to receive the following cash payments:

The amount of charges billed by the Settlement Class Member ("Billed Charge") less the amount previously allowed by USAA based upon its application of Section 627.736(5)(a)2. ("Allowed Amount") for the health care services identified in the Settlement Claim Form.

The following maximums will apply to the above calculation of Settlement Relief. If the Billed Charge exceeds the amounts applicable to those services as set forth under a. through h. below ("Settlement Relief Charge"), then the Settlement Relief Charge shall replace the Billed Charge in the calculation of Settlement Relief (i.e., Settlement Relief Charge less Allowed Amount):

    a. For emergency transport and treatment by providers licensed under chapter 401, the Settlement Relief Charge shall be limited to 80 percent of 250 percent of Medicare.

    b. For emergency services and care provided by a hospital licensed under chapter 395, the Settlement Relief Charge shall be limited to 80 percent of 87.5 percent of the hospital's usual and customary charges.

    c. For emergency services and care as defined by Section 395.002(9), Florida Statutes, provided in a facility licensed under Chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the Settlement Relief Charge shall be limited to 80 percent of 110 percent of the provider's usual and customary charges.

    d. For hospital inpatient services, other than emergency services and care, the Settlement Relief Charge shall be limited to 80 percent of 250 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

    e. For hospital outpatient services, other than emergency services and care, the Settlement Relief Charge shall be limited to 80 percent of 250 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

    f. For all other medical services, supplies, and care, the Settlement Relief Charge shall be limited to 80 percent of 250 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, the Settlement Relief Charge shall be limited to 90 percent of the maximum reimbursable allowance under workers' compensation, as determined under Section 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed.

    g. When determining settlement payments for magnetic resonance imaging ("MRI") and other imaging services, the Settlement Relief Charge will be based upon the Medicare Part B non-facility price calculated by CMS without reference to the Outpatient Prospective Payment System ("OPPS") limitation.

    h. Moreover, for the purposes of Settlement Relief, the above-referenced Medicare fee schedules and rates shall be calculated based on the Medicare prices for the same year in which the services were rendered, unless the Medicare prices for 2007 are higher, in which case payment shall be based on the Medicare prices for 2007. For example, if the amount originally applied was based upon 2007 instead of the year the services were provided, then the Medicare prices for 2007 will likewise be applied to the settlement claim.

Payments will include simple interest in an amount equal to 4 percent per annum on the Settlement Relief amount, calculated starting on the date 30 days after USAA first received the original bill.

## WHO IS IN THE CLASS

### 8. Am I a Class Member?

USAA's records show that you are a Class Member who submitted one or more claims for treatment or services provided to USAA insureds, since January 1, 2008.

The Class does not include USAA, any parent, subsidiary, affiliated or controlled person of USAA, as well as officers, directors, agents, servants and employees of USAA and immediate family members of such persons.

### 9. I'm still not sure if I am included.

If you are still not sure whether you are included, you can write to Class Counsel at Jeeves Law Group, P.A., attn: Scott R. Jeeves, Esq., 954 First Avenue N., St. Petersburg, Florida 33705, for more information.

## YOUR RIGHTS AND OPTIONS

You have to decide whether to stay in the Class or whether to exclude yourself no later than **January 8, 2013.**

### 10. How can I make a claim for a monetary payment?

If you wish to make a claim for monetary payment, then you must do the following:

    1. Read this Notice carefully.

    2. Review the Claim Form accompanying this Notice.

3. Read the instructions carefully, fill out the form completely, sign it under penalty of perjury, and mail the form to the Class Administrator postmarked no later than **March 22, 2013**.

You must mail your proof of claim forms to the Class Administrator at

**P.O. Box 2847**
**Faribault, MN 55021-8647**

Failure to timely submit a signed and properly completed form will result in your monetary payment claim automatically being denied.

**IMPORTANT. No extension of this deadline will be permitted.** Failure to timely submit a properly completed claim form will result in the automatic denial of your monetary payment claim. Any and all information submitted will be subject to verification by the parties and the Court.

### 11. What happens if I do nothing at all?

By doing nothing, you are staying in the Class. However, if you do not timely submit an eligible and properly completed Claim Form, you will receive no monetary payment. In addition, if you do nothing, you will be legally bound by all of the decisions that the Court makes and deemed to have given up your right to sue USAA in a separate lawsuit regarding the claims and issues raised in this litigation.

### 12. What happens if I exclude myself?

If you exclude yourself from the Class, you will not receive any monetary payment as a result of the settlement. If you do pursue your own lawsuit after you exclude yourself, you'll have to hire your own lawyer for that case, and you will have to prove your claims, without the benefit of the work performed by the lawyers in this class action.

### 13. How do I ask to be excluded?

To exclude yourself, you must send a written request that sets forth: (1) that you are specifically requesting to be excluded from the Class in the Action; (2) your full name and any aliases, current address, telephone number, and all tax identification numbers used during the Class Period; (3) the patient names and dates of service for any claims or bills to be opted out of this Settlement; and (4) your signature, or if a corporation or other entity, the signature of the entity or its authorized representative, including the name and position of the signatory.

If the opt-out request is submitted by someone other than the Settlement Class Member, or an officer or authorized employee of the Settlement Class Member, then the third party signor (e.g., attorney, billing agent, or other third party) must include the following attestation on the opt-out request: "I certify and attest to the Court that the Settlement Class Member on whose behalf this opt-out request is submitted has been provided a copy of and opportunity to read the Class Notice and thereafter specifically requested to be excluded from this Settlement Class." The opt-out request must include the patient names and dates of service for the bills or claims for which the class member intends to opt-out. Otherwise, the opt-out request will apply to all patients and dates of service covered by the Settlement.

You must mail your exclusion request postmarked by **January 8, 2013**, to: Class Administrator, P.O. Box 2847, Faribault, MN 55021-8647.

### 14. How do I tell the Court that I don't like the Settlement?

You can object to the settlement. You must give reasons in writing as to why you think the Court should not approve it, and the Court will consider your views. To object, you must send your written objection to the Class Administrator at **P.O. Box 2847, Faribault, MN 55021-8647**, with your specific reasons in writing, no later than **December 9, 2012**. Class Members may object on their own or through an attorney retained at their own expense. If you retain an attorney to represent you, the attorney must file a notice of appearance with the Clerk of the Court, **George Edgecomb Courthouse, 800 E. Twiggs St., Room 530, Tampa, Florida 33602**, and serve copies of same on Class Counsel, the Class Administrator, and USAA's counsel, no later than **December 9, 2012**; otherwise, they will not be allowed to make any objection(s) at the Final Fairness hearing.

### 15. What is the difference between objecting and excluding?

Objecting is telling the Court that you don't like something about the settlement. Excluding yourself is telling the Court that you don't want to be part of the settlement. If you exclude yourself, you have no basis to object to the settlement because the settlement will not affect your legal rights.

- 5 -

# THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in this case?

The Court appointed the Jeeves Law Group, The Divale Law Group, P.A., de la Parte & Gilbert, P.A., and Craig E. Rothburd, P.A., as counsel for the Class Members. More information about these law firms, their practices, and their lawyers' experience is available at www.JeevesLawGroup.com. These firms are experienced in handling similar cases. You may contact Class Counsel by writing to Scott R. Jeeves, Esq., Jeeves Law Group, P.A., 954 First Avenue North, St. Petersburg, Florida 33705 or calling (727)894-2929.

### 17. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel is working on your behalf. You may also choose to hire your own lawyer at your own expense.

### 18. How will the lawyers be paid?

USAA has agreed to pay Class Counsel their reasonable attorney's fees and costs, separate and apart from the recovery for the Class under the Settlement. The Court will decide the amount of any award to Class Counsel. You will not have to pay any of these fees or expenses.

## THE FAIRNESS HEARING

### 19. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing on February 5, 2013 at the courthouse of the Circuit Court of the Thirteenth Judicial Circuit, Tampa, Hillsborough County, 800 E. Twiggs Street, Tampa, Florida 33602. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court will also decide how much USAA must pay Class Counsel for attorney's fees and costs, which will be separate from the amount that USAA has agreed to pay the Class Members. After the hearing, the Court will decide whether to finally approve the settlement, finally certify the Class, and enter a Final Order directing the settlement to be implemented. We do not know how long these decisions will take.

### 20. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. You may attend the hearing at your own expense. If you send an objection and a notice of your intent to appear at the Fairness Hearing, you may come in person to the Court for the Fairness Hearing or retain your own attorney to appear for you. If you have submitted an objection, you do not need to attend the Fairness Hearing. The Court will consider your objection if it was timely submitted, regardless of whether you attend the hearing in person.

### 21. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must mail to the Class Administrator, at P.O. Box 2847, Faribault, MN 55021-8647, and file with the Court, at the George Edgecomb Courthouse, 800 E. Twiggs St., Room 530, Tampa, Florida 33602, a notice of intention to appear at the Fairness Hearing by sending a letter stating that it is your "Notice of Intention To Appear." Be sure to include your name, address, telephone number, claim information, and your signature. Your Notice of Intention To Appear must be postmarked no later than **December 9, 2012; otherwise, you will not be permitted to speak or make any objection at the Final Fairness hearing.**

## GETTING MORE INFORMATION

### 22. Are more details available?

You may contact class counsel identified in paragraph 16 above to obtain more details regarding this settlement. The settlement agreement, preliminary approval order and operative pleadings are available at www.floridapipsettlement.com.

# EXHIBIT "B"

| | | |
|---|---|---|
| **LANCE LARKIN AND KAREN JACOBS, Individually and as Representatives of All Persons Similarly Situated,** | § § § § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiffs,* | § § | |
| vs. | § § | |
| | § | HARRIS COUNTY, TEXAS |
| **UNITED SERVICES AUTOMOBILE ASSOCIATION and AUTO INJURY SOLUTIONS, INC.,** | § § § § | |
| *Defendants.* | § § | 189th JUDICIAL DISTRICT |

**PLAINTIFFS' FIRST AMENDED COMPLAINT
AND PUTATIVE CLASS ACTION COMPLAINT
AND REQUEST FOR DISCLOSURE**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW, Lance Larkin and Karen Jacobs, Individually and as Representatives of All Persons Similarly Situated, Plaintiffs herein, complaining of United Services Automobile Association ("USAA") and Auto Injury Solutions, Inc. ("AIS"), Defendants, and files Plaintiffs' Original Complaint and Putative Class Action Complaint and Request for Disclosure. For causes of action Plaintiffs would show as follows:

## I. INTRODUCTION

1.1    This is a suit for money damages and declaratory relief on behalf of Plaintiffs and all persons similarly situated (collectively referred to as the "Class" or "Plaintiffs") as a result of the Defendants' wrongful actions outlined below. Defendants

USAA and AIS engage in a pattern of practice in which they automatically and routinely deny, delay, and/or underpay properly submitted personal injury protection ("PIP") claims related to automobile accidents for no legitimate reason, or for reasons that are prohibited by statute.

## II. PARTIES

2.1     Plaintiff Lance Larkin is a resident of Harris County, Texas and may be served with notice through the undersigned attorney.

2.2     Plaintiff Karen Jacobs (collectively with Lance Larkin, the "Named Plaintiffs") is a resident of Harris County, Texas and may be served with notice through the undersigned attorney.

2.3     Defendant Auto Injury Solutions, Inc. is a foreign for-profit company doing business in the State of Texas and has been served herein.

2.4     Defendant, United Services Automobile Association, is a duly incorporated insurance company, authorized to do business in and doing business in the State of Texas and has been served herein.

## III. JURISDICTION & VENUE

3.1     This court has jurisdiction over the parties and the subject matter of this action in that Defendants are subject to process in this State and the amount in controversy is within the jurisdictional limits of this Court.

3.2     Venue is proper in the Harris County, as many of the events that give rise to this action occurred in Harris County, Texas.

3.3     Plaintiffs intend that discovery be conducted under Level 3.

## IV. FACTS SPECIFIC TO THE NAMED PLAINTIFFS

### A.    *The policies of insurance at issue; insured-insurer relationship*

4.1    In 2014, Lance Larkin was covered by an automobile insurance policy issued by USAA (the "Larkin Policy"). In 2013, Karen Jacobs was covered by an automobile insurance policy issued by USAA (the "Jacobs Policy," together with the Larkin Policy, the "Policies").

4.2    The Policies included Personal Injury Protection Coverage or "PIP."

4.3    In addition to the terms of the contracts, the PIP provisions of the Policies issued to the Named Plaintiffs are governed by TEXAS INSURANCE CODE §§1952.151—1952.161 (Subchapter D of Chapter 1952 of the TEXAS INSURANCE CODE).

4.4    The Named Plaintiffs faithfully paid their premiums, including the premiums charged for PIP.

4.5    USAA accepted the premiums paid by the Named Plaintiffs, including the premiums charged for PIP.

4.6    The Policies are valid, enforceable contracts between the Named Plaintiffs and USAA.

4.7    The Larkin Policy was valid and in force at the time of his underlying accident on February 19, 2014 (the "Larkin Accident"), and at all relevant times since then. The Jacobs Policy was valid and in force at the time of her underlying accident on June 7, 2013 (the "Jacobs Accident," together with the Larkin Accident, the "Accidents").

4.8     The Accidents are covered causes of loss under the Policies, and Defendants have never disputed that the Accidents are covered by the Named Plaintiffs' PIP.

4.9     Each of the Policies is an "insurance contract" as that term is commonly used in the law of insurance.

4.10    USAA is an "insurer" as that term is commonly used in the law of insurance with regard to the Policies.

4.11    On the dates of the Accidents, each of the Named Plaintiffs was a "covered person" as that term is defined in the Policies.

4.12    On the dates of the Accidents, each of the Named Plaintiffs was an "insured" as that term is commonly used in the law of insurance with regard to the Policies.

4.13    Each of the Named Plaintiffs is a "person" as that term is defined by Section 541.002(2) of the TEXAS INSURANCE CODE as construed by *Ceshker v. Bankers Commercial Life Ins.*, 568 S.W.2d 128, 129 (Tex. 1978).

4.14    USAA is a "person" as that term is defined by Section 541.002(2) of the TEXAS INSURANCE CODE.

4.15    As reflected in the Larkin Policy, Larkin's PIP coverage limit was $2,500 per person at the time of the Larkin Accident. As reflected in the Jacobs Policy, Jacobs' PIP coverage limit was $100,000 per person at the time of the Jacobs Accident.

4.16    USAA is required to pay benefits in accordance with the TEXAS INSURANCE CODE provisions governing PIP and the Policy language.  Under the TEXAS INSURANCE CODE:

> [P]ersonal injury protection consists of provisions of an automobile liability insurance policy that provide for payment to the named insured in the policy…all reasonable expenses that: (1) arise from an accident; (2) are incurred not later than the third anniversary of the date of the accident; and (3) are for:
>
> (A)    necessary medical, surgical, x-ray, or dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing or funeral services;
>
> (B)    in the case of an income producer, replacement of income lost as a result of the accident.

TEX. INS. CODE §1952.151.

4.17    Additionally, PIP benefits are "payable without regard to: (1) the fault or nonfault of the named insured or recipient in causing or contributing to the accident; and (2) any collateral source of medical, hospital, or wage continuation benefits."  TEX. INS. CODE §1952.155.

4.18    Under the Policies, the Named Plaintiffs were entitled to recover their reasonable medical expenses. The Policies required USAA to pay reasonable fees for necessary and appropriate medical services.

### B.     The Accident giving rise to Larkin's insurance claim

4.19    On February 19, 2014, Larkin was driving southbound on West Lake Houston Parkway with his two daughters, Taylor and Megan, in the car. A driver who was drunk and high on drugs was driving on the same road. This severely intoxicated driver struck multiple vehicles on the road including repeated collisions with Larkin's vehicle. These collisions caused Larkin's vehicle to slam into and over the cement barrier on the bridge on which Larkin was driving at the time.

4.20    On impact, Larkin felt sharp pains in his back, neck, and shoulders. Larkin was able to scramble from his vehicle and move his daughters to safety. Paramedics were called to the scene where they immobilized four year old Megan and seven year old Taylor on backboards and neck braces. Larkin and his daughters were then taken to Kingwood Medical Center emergency room for treatment.

4.21    Larkin's daughters were cleared of any serious injuries, however doctors did note the girls' substantial fear and anxiety over the crash. It was determined that Larkin was not in an emergency condition, but his physical injuries were apparent due to the severe pain he was experiencing in his neck, back, and shoulders. Larkin was advised by doctors to seek follow-up treatment as soon as possible.

4.22    Larkin did follow up with Dr. Katherine Ona at Vault Chiropractic to determine the cause of and treat the persistent pain in his back, neck, and shoulders. Dr. Ona administered a series of exams and reported:

- Cervical range of motion was restricted with extension, left lateral flexion due to pain. Provocative tests were performed to the cervical spine and revealed Maximum Cervical compression, Distraction and Shoulder

Depression orthopedic tests revealed cervical pain on the right. There was tenderness upon palpation to the cervical paraspinal, scalene and upper trapezius muscles. Sensory, deep tendon reflexes (DTRs) and motor tests were within normal limits.

- Radiographic examination of the cervical spine revealed abnormal straightening of the normal cervical spine curvature suggesting possible muscle spasm. Mild loss of height involving the C5 vertebral body with height loss estimated at 20%, age indeterminate.

- Lumbar spine: Lumbar ranges of motion were within normal limits. Provocative tests were performed to the lumbar spine and revealed Kemp's and Yeoman's orthopedic tests were positive for lumbar pain. There was tenderness upon palpation to lumbar paraspinal and bilateral gluteal musculature.

- The tests performed were indicative of the following diagnosis: 847.0 Cervical Sprain/Strain; 874.1 Thoracic Sprain/Strain; 874.2 Lumbar Sprain/Strain

4.23   Larkin's injuries required substantial ongoing medical treatment and physical therapy. Larkin underwent therapeutic exercises 2-3 times per week that consisted of ultrasound, electrical muscle stimulation (EMS), massage therapy, manual therapy, chiropractic manipulation, extensions, stretching exercises, squats, bike/treadmill exercises, heel slides, and other various therapeutic exercises.

4.24   Larkin was referred to One Step Diagnostic due to continued pain in his shoulder and lower back. He was treated by Dr. Kristin Coleman of One Step on March 19, 2014. Dr. Coleman performed X-rays of Larkin's lumbar and cervical spine and reported the following:

- Lumbar Spine: Abnormal straightening of the normal lumbar spine lordosis suggesting possible muscle spasm.

- Cervical Spine: Abnormal straightening of the normal cervical spine curvature suggesting possible muscle spasm.

- Mild loss of height involving the C5 vertebral body with height loss estimated at 20% age indeterminate. If clinically indicated, an MRI of the cervical spine may be helpful for further evaluation.

4.25   Larkin continued therapeutic treatment with Vault Chiropractic through May 9, 2014, although he continued to report occasional discomfort in his right shoulder and lower back and regular pain in those areas each morning.

4.26   Larkin's emergency care bills for him and his daughters, and the bills for Larkin's necessary ongoing treatment totaled approximately $6,605.00.

4.27   The Accident and the resulting medical bills were reported to USAA by and through Larkin's attorney, Mr. Brad Wyly of Wyly & Cook, PLLC in a letter dated December 11, 2014. In the letter, USAA was provided with a summary of the Accident and all verified medical bills for the necessary treatment of Larkin and his daughters.

4.28   USAA acknowledged receiving these bills and records through Russell A. Rydman, a representative of AIS and USAA, yet only paid Larkin $400.98 in PIP benefits. USAA compelled Larkin to hire counsel and file this lawsuit to obtain the Larkin Policy benefits he is owed.

4.29   USAA did not reimburse medical bills that USAA acknowledged were due. It is undisputable that Larkin's hospitalization following the Accident and the medical care and treatment he received were medically necessary and appropriate as a result of the Accident: a covered cause of loss under the Policy. The PIP provisions of the TEXAS INSURANCE CODE required these bills to be paid within 30-days of being submitted,

without regard to collateral sources. Larkin provided these bills in December 2014, *and now, nearly two years later, they still have not been paid*.

4.30　USAA routinely misrepresents the law to its insureds to deny, delay, and/or underpay claims. These form letters—shifting losses to Medicare or any other insurer—allow USAA to avoid paying millions of dollars in claims each year. In making these misrepresentations USAA violates the Texas Insurance Code by:

    i.　**making an untrue statement of material fact**;

    ii.　failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

    iii.　making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; or,

    iv.　**making a material misstatement of law**.

TEX. INS. CODE ANN. §541.061 (Vernon).

4.31　USAA and AIS have been doing this for years in a variety of ways—to the Named Plaintiffs and others—to deny, delay, or underpay properly submitted PIP claims that should be paid.

4.32　Larkin demonstrated his medical expenses to Defendants during the claim submission process. Larkin timely submitted all billing records. He timely submitted his additional medical and billing records for ongoing care.

4.33　Despite having these records, USAA continues to withhold payment of reasonable and necessary medical bills clearly covered under Larkin's PIP insurance. The repeated refusal to reimburse Larkin left him without the PIP benefits he contracted and paid for as reflected in the Policy.

### C. *Auto Injury Solutions*

4.34    Letters from the USAA adjusters indicate that Larkin should send all correspondence and mail to Auto Injury Solutions. Upon information and belief, AIS is USAA's contracted claims administrator. The relationship is so close that Larkin cannot even tell whether individuals, identified as USAA adjusters in correspondence, were actually AIS employees.

4.35    Because of the lack of discovery to clarify the employment and agency relationships of the various adjusters outlined above, Larkin pleads that the acts committed by the various "USAA adjusters" and claims representatives were done jointly or severally by AIS, and that such persons were employees or agents of AIS, either jointly or severally with USAA.

4.36    Upon information and belief, USAA requires policyholders to submit medical records to AIS so that AIS may *create a basis for denial.* That is, if AIS can second guess the provider or make any argument that the policyholder's treatment was unnecessary or not the result of the accident, AIS and USAA will deny the claim. Rather than timely investigating and paying Larkin's PIP claim, AIS used that time to create a pretext for denial.

4.37    AIS is an agent or contractual adjuster for USAA.  AIS is a "person" as that term is defined by Section 541.002(2) of the TEXAS INSURANCE CODE.

### D. *The Accident giving rise to Jacobs' insurance claim*

4.38    On June 7, 2013 Jacobs was driving northbound near the 12700 block of Jones Road while Herbert McKnight was traveling westbound near the 10900 block of

Mist Lane. Failing to yield the right of way, Herbert McKnight attempted to turn left onto Jones Road and crashed into Jacobs' vehicle. Police were dispatched to the scene and Herbert McKnight was cited for failing to yield the right of way. Jacobs presented to North Cypress Emergency Center on June 8, 2013. She was treated for her injuries by Dr. Mark Rigo.

4.39 Jacobs' injuries required substantial ongoing medical treatment and physical therapy. Jacobs underwent therapeutic treatment at North Cypress Medical Center from July 2, 2013 until February 3, 2014. The cost of Jacobs' physical therapy care totals $34,512.50. USAA only reimbursed Jacobs $3,011.96 for this treatment.

4.40 Jacobs' injuries also required chiropractic care. Jacobs underwent chiropractic care from Dr. Amy Nong, DC from October 25, 2013 until January 10, 2014. The cost of Jacobs' chiropractic care totals $3,440. USAA only reimbursed Jacobs $935.00 for this treatment.

4.41 The Accident and the resulting medical bills were reported to USAA by and through Jacobs' attorney. USAA was provided with a summary of the Accident and all verified medical bills for the necessary treatment of Jacobs.

4.42 USAA acknowledged receiving these bills and records which is evidenced by USAA's PIP and Medical Payments Log, yet USAA only paid Jacobs $3,946.96 in PIP benefits for her physical therapy treatment at North Cypress Medical center and her chiropractic treatment by Dr. Amy Nong. USAA compelled Jacobs to hire counsel and file this lawsuit to obtain the Policy benefits she is owed.

4.43    USAA did not reimburse medical bills that USAA acknowledged were due. It is undisputable that Jacobs' treatment following the Accident and the medical care and treatment she received were medically necessary and appropriate as a result of the Accident: a covered cause of loss under the Policy. The PIP provisions of the TEXAS INSURANCE CODE required these bills to be paid within 30-days of being submitted, without regard to collateral sources. Jacobs provided these bills in 2013, *and now, over 3 years later, they still have not been paid*.

4.44    Jacobs demonstrated her medical expenses to Defendants during the claim submission process. Jacobs timely submitted all billing records. She timely submitted her additional medical and billing records for ongoing care.

4.45    Despite having these records, USAA continues to withhold payment of reasonable and necessary medical bills clearly covered under Jacobs' PIP insurance. The repeated refusal to reimburse Jacobs left her without the PIP benefits she contracted and paid for as reflected in the Policy.

### E.    *Facts Relevant to the Class*

4.46    USAA and AIS have routinely engaged in a pattern and practice of denying, delaying, and underpaying insureds' legitimate PIP claims. By delaying, denying, or conditioning PIP payments, Defendants have created a systematic means to violate statutory and common law duties and have significantly damaged Plaintiffs, as described more fully below.

4.47    Upon information and belief, USAA and AIS's treatment of the Named Plaintiffs' PIP claims is not unique to the Named Plaintiffs. Nor is it the result of a few

"bad apple" employees. In fact, Larkin is personally aware of numerous other policyholders to whom USAA has delayed, denied, underpaid, or conditioned PIP benefits. Upon information and belief, there are numerous attorneys across the State of Texas who will testify that USAA routinely delays, denies, conditions, or underpays PIP claims for its policyholders.

4.48    Furthermore, USAA and AIS's coordinated scheme is betrayed by their rotation of a handful of arbitrary and formulaic excuses: (1) that Medicare or other private insurance is primary, (2) an alleged lack of information, (3) a need for a provider's tax IDs or ICD-9 codes, or (4) references to inapplicable case law concerning the reasonableness and necessity of medical bills paid by the at-fault party. No wonder unrepresented insureds simply give up.

4.49    Nor is this the first allegation against USAA. In the past 5 years: USAA and AIS have been the subject of almost half a dozen class action complaints, in at least five states,[1] concerning the denial or underpayment of PIP benefits. Many of these complaints describe claims identical to the Named Plaintiffs'.[2] For example, in *Soukup v. USAA Casualty Ins. Co.*, USAA's conduct is described:

---

[1] *MRI Associates of St. Pete, Inc., d/b/a Saint Pete MRI, et al. v. USAA*; Cause No. 10-CA-016785; 13th Judicial Cir. Ct., Hillsborough Co., FL (Florida); Exhibit "1," *Soukup v. USAA Casualty Ins. Co., et al.*, Cause No. 3:11-CV-565; *see* Exhibit "2," *USAA Sued Over Claims*, San Antonio Express News, May 12, 2011 (Oregon); *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 362 (D. Ariz. 2009) (Arizona); *Cote v. United Services Automobile Association, et al.*, Cause No. 12-2-12637-2 KNT; Superior Ct. King County, Washington (Washington); *Bemis v. United Services Automobile Association, et al.*; Madison Co. Cir. Ct. 2005 (Illinois).

[2] Exhibit "3," *Notice of Class Settlement in MRI Associates*, pp. 3 ("2. What is this lawsuit about? The lawsuit is about whether USAA improperly failed to make full payment of personal injury protection [] benefits in an amount allowable under chapter 627 of the Florida Statutes.").

USAA contracted with an apparent third-party provider, Auto Injury Solutions, Inc., to assist USAA in implementing and carrying out its fraudulent cost containment program under the guise of AIS providing 'independent' and impartial medical review services. In reality, AIS serves at the direction of USAA, and/or as the alter ego of USAA, in that AIS's services are not rendered independently and are focused on generating false and misleading reports in order to save USAA millions of dollars at the expense of military personnel and their family members who have been injured in automobile collisions and whose bills were reasonable and necessarily incurred.

*See* Ex. "1," pp. 13.

## V. CLASS ACTION ALLEGATIONS

5.1     This action is brought as a class action under the TEXAS INSURANCE CODE §541.251.  Upon information and belief, USAA and AIS's conduct of denying, delaying, or conditioning PIP payments has been systematic and continuous and has affected similarly situated Plaintiffs over time.  Larkin brings this class action to secure redress for USAA and AIS's denial of properly submitted insurance claims and for Texas state statutory and common law causes of action.  USAA and AIS's obligations and conduct have been uniform throughout the Class Period and there are common questions of law and fact that affect the entire Class.

5.2     Larkin brings this action individually and on behalf of all persons similarly situated and seeks certification of the following Class:

(a)     All persons who were issued USAA automobile insurance policies in the State of Texas; and

(b)     those policies include PIP coverage by USAA (collectively, the "Coverage") at the time a PIP claim was made; and

    (c)      those persons had their PIP benefits improperly delayed, denied, underpaid, or conditioned in violation of TEXAS INSURANCE CODE § 1952, *et seq.*; and,

Excluded from this class are:

    (a)      those who have not been denied their benefits coverage by USAA as described above;

    (b)      Plaintiffs' counsel; and

    (d)      the Judge of the Court to which this case is assigned.

5.3    Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. TEX. INS. CODE §541.256(1). The exact number of Class members is unknown, but can be determined from the records maintained by USAA. The Named Plaintiffs believe there are thousands of persons in the Class.

5.4    Plaintiffs anticipate that the class may be divided into sub-classes based on the amount of PIP coverage contracted for by the individual Class Members.

5.5    The Named Plaintiffs are members of the Class of victims described herein.

5.6    There are numerous and substantial questions of law and fact common to all of the members of the Class which will control this litigation and which will predominate over any individual issues. See TEX. INS. CODE §541.256(2). Included within the common questions of law and fact are:

    (a)      whether USAA and AIS's denials, delays, underpayments, or conditions regarding payment of Coverage is unlawful;

    (b)      whether USAA and AIS's denial, delay, underpayments, or conditions concerning PIP payments harms policyholders;

    (c)      whether USAA violated its common law duties of good faith and fair dealing;

(d)     whether USAA breached its contract with each Class member by failing to timely pay properly submitted PIP claims;

(e)     whether USAA breached its contract with each Class member by denying PIP claims unless and until the Class member provided evidence of their injuries;

(f)     whether USAA violated sections §1952.151, *et seq.* of the TEXAS INSURANCE CODE pertaining to PIP.

(g)     whether USAA and AIS violated sections 541 and USAA violated 542 of the TEXAS INSURANCE CODE;

(h)     whether USAA was unjustly and substantially enriched as a result of this wrongful conduct;

(i)     whether the acts and conduct of USAA violated other state and/or common laws; and,

(j)     whether Class members were damaged as a result of this conduct.

5.7     The claims of the Named Plaintiffs are typical of the claims of the Class and the Named Plaintiffs have no interests adverse to the interests of other members of the Class.  See TEX. INS. CODE §541.256(3).  To the extent that the Class must be divided into subclasses, that option is available given the uniformity of the questions of law and fact common to any subclasses. TEX. INS. CODE §541.258.

5.8     The Named Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced and competent in the prosecution of class actions, complex litigation, and specifically insurance class action claims.

5.9     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, the Class members will

continue to suffer damages and USAA and AIS's conduct will proceed without effective remedy.

5.10    Most individual members of the Class have little interest in or ability to prosecute an individual action, due to the complexity of the issues involved in this litigation and the relatively small, although significant, damages suffered by each member of the Class.

5.11    This action will cause an orderly and expeditious administration of class claims, economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

5.12    This action should present no difficulty that would impede its management by the Court as a class action and is the best available means by which the Named Plaintiffs and the other members of the Class can seek redress for the harm caused to them by Defendants.

## VI. NAMED PLAINTIFFS AND CLASS CLAIMS
## BREACH OF CONTRACT- CLAIM AGAINST USAA

6.1    The insurance policies USAA issued to Plaintiffs are valid and enforceable contracts that requires USAA to pay benefits according to the terms of those policies. By failing to pay the PIP benefits described above, USAA breached the contracts, and as a result, Plaintiffs have incurred damages and unnecessary hardship. The Named Plaintiffs and other similarly situated Plaintiffs included in the class have complied with all conditions precedent to bringing this action, including promptly submitting their proof of loss and giving written notice to USAA of their claim.

6.2     The Named Plaintiffs and other similarly situated Plaintiffs included in the class are proper Plaintiffs to bring this action because they are parties to the insurance contracts breached by USAA.

6.3     The Named Plaintiffs and other similarly situated Plaintiffs included in the class performed under the contract by paying premiums and complying with the contracts' terms and conditions.

6.4     USAA breached these contracts by failing to comply with its promise to pay benefits owed under the insurance contracts. The breach is material, as the payment of benefits is the essence of a contract for insurance.

6.5     USAA's breach injured the Named Plaintiffs and the other similarly situated Plaintiffs included in the class by denying them financial resources to pay medical bills and replace lost wages. Had USAA complied with the terms of the contract, the Named Plaintiffs and the other similarly situated Plaintiffs included in the class would have received the money they contracted for and been better off.

**TEXAS INSURANCE CODE PIP PROVISION VIOLATIONS – CLAIM AGAINST USAA**

6.6     USAA has violated TEX. INS. CODE §1952.151, *et seq.* by its refusal to pay PIP benefits in a timely manner. Specifically, USAA violated §1952.155 by refusing to pay benefits without regard to fault or "any collateral source of medical, hospital, or wage continuation benefits."

6.7     The TEXAS INSURANCE CODE § 1952.155(a) requires that PIP benefits be paid within 30-days of satisfactory proof of the claim. TEX. INS. CODE § 1952.155(b)

notes that an insurer *may require* reasonable medical proof of an alleged recurrence if there is a lapse in treatment; however, no such requirement exists when providing benefits for an initial occurrence so obviously associated with a covered claim.

6.8     In this case, USAA knew that the Named Plaintiffs were injured in the Accidents, as they and their attorneys informed it of that fact.

6.9     USAA never *internally* questioned whether the Named Plaintiffs were actually involved in the Accidents, or the severity of their injuries. USAA simply refused to pay.

6.10    Upon information and belief, these same tactics and schemes to delay, deny, and underpay PIP coverage are employed by USAA against all its policyholders in the State of Texas. Upon information and belief, discovery will reveal similar malfeasance on the part of USAA with regard to the other similarly situated Plaintiffs included in the class. Counsel for Plaintiffs in this case are aware of many other USAA PIP policyholders who have been victimized by USAA's policies. Upon information and belief, there are numerous attorneys representing policyholders against USAA who are aware of multiple instances of conduct such as that described herein.

## TEXAS DECEPTIVE TRADE ACT PRACTICE VIOLATIONS – CLAIM AGAINST USAA AND AIS

6.11    Plaintiffs are "consumer[s]" as defined by TEX. BUS. CODE §17.45(4). Plaintiffs sought or acquired goods or services by purchasing those goods or services from USAA. USAA violated the TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA")

(TEX. BUS. & COM. CODE §17.44 *et seq*.) because USAA engaged in false, misleading, and/or deceptive acts or practices that Plaintiffs relied on to their detriment.

6.12    Specifically, Plaintiffs purchased insurance services from USAA.

6.13    USAA violated § 17.46(b) by engaging in "false, misleading, or deceptive acts". All of the acts described below occurred in Texas.

6.14    USAA violated § 17.46(b)(5) by representing that its insurance contracts had characteristics, uses, and benefits which they did not have. Specifically, USAA represented to the Named Plaintiffs and the other similarly situated Plaintiffs included in the class, prior to issuing the insurance policy and through its term, that its insurance contracts included PIP benefits as those benefits are described in law. USAA represented that it would pay PIP for a covered person involved in an auto accident, including reasonable fees for medically necessary and appropriate services and 80% of a wage earner's income actually lost. USAA promised these benefits within 30-days of proof of the claim. USAA made these promises in an effort to secure insurance contracts and premiums, and breached these promises in order to avoid contract payments so that USAA could enjoy the profit on unpaid benefits. In fact, USAA's insurance as administered does not provide these benefits, and certainly does not provide them within 30-days, as promised. The facts underlying this claim are described in Section 4, *supra*.

6.15    USAA violated § 17.46(b)(9) by advertising a good or service with the intent not to sell them as advertised. USAA advertised to the Named Plaintiffs and other similarly situated Plaintiffs, prior to issuing the insurance policy and through its term, that it would provide automobile insurance as required by law, and that it would fulfill its

contractual obligations when they are triggered. In fact, USAA intended to delay and deny claims and avoid payment of its obligations. USAA intended to avoid payment within the 30-day window, and intended to foist its obligations onto any other party, rather than comply with the terms of its policies.

6.16    USAA violated § 17.46(b)(24) by failing to disclose to the Named Plaintiffs and the other similarly situated Plaintiffs USAA's scheme to deny, delay, and underpay legitimate PIP claims. USAA failed to disclose this information in an effort to induce the Plaintiffs to purchase insurance with USAA and maintain insurance with USAA after it was purchased. If USAA had disclosed that it would not honor Texas law or the terms of its contract with the Plaintiffs, they would not have purchased the insurance products offered by USAA. This failure to disclose occurred prior to USAA's issuing the insurance policies and throughout their terms. In fact, USAA intended to delay and deny claims and avoid payment of its obligations. USAA intended to avoid payment within the 30-days it stated it will pay, and intended to foist its obligations onto any other party rather than comply with the terms of its policies. The facts underlying this claim are described in Section 4, *supra*.

6.17    The Named Plaintiffs and other similarly situated Plaintiffs included in the class relied on these false statements, false advertising, and failures to disclose in purchasing insurance with USAA and paying on-going premiums.

6.18    The Named Plaintiffs and other similarly situated Plaintiffs included in the class have suffered damages, namely the loss of the economic benefits promised by

USAA, as well as unpaid medical bills and unmet financial needs from lack of replacement for lost income, as a direct result of the violation by USAA.

6.19    Moreover, the course of conduct undertaken by USAA in handling PIP claims for the Named Plaintiffs and other similarly situated Plaintiffs included in the class, including misrepresenting to its insured that it would pay medical bills as they came in and would pay for lost income, misrepresenting that government programs or another insurer is the primary payer, failing to reimburse for covered medical expenses after knowing they should be covered and thus increasing the cost and hardship on its insureds, requesting information that is irrelevant to the determining any material issues under the policy, requesting information already known to USAA, and collecting premiums for coverage which USAA intends to delay and deny, represents an unconscionable course of action in violation of the § 17.50(a)(3). The specifics of this course of conduct as it occurred with regard to Larkin are contained in section 4, *supra*.

6.20    USAA further violated the DTPA due to its violations of TEXAS INSURANCE CODE § 541.151 *et seq*., the tie-in provisions, which are described in detail below.

6.21    AIS is an agent or contracting adjuster for USAA. Upon information and belief, the acts described in this Complaint (except collecting premiums for coverage which USAA intends to delay or deny) were perpetuated or participated in by AIS as an agent or contracting adjuster for USAA. AIS and USAA worked together in adjusting Larkin's PIP claim, with USAA requesting information previously sent (as directed) to AIS.

6.22   These Defendants' acts and omissions were a producing cause of Plaintiffs' damages.

6.23   These Defendants' conduct was committed knowingly and/or intentionally, because, at the time of the acts and practices complained of USAA and AIS had actual awareness of the falsity, deception or unfairness of their acts and practices giving rise to Plaintiffs' claims and Plaintiffs detrimentally relied on the falsity or deception and/or in detrimental ignorance of the unfairness.

## TEXAS INSURANCE CODE §541 ET. SEQ. VIOLATIONS – CLAIM AGAINST USAA AND AIS

6.24   Defendants violated the TEXAS INSURANCE CODE §541 *et. seq*. because they engaged in unfair and/or deceptive acts or practices in the business of insurance.

6.25   USAA violated §541.051(1) by making statements that misrepresented the terms of the insurance policy and the benefits or advantages promised by the policy. USAA represented to Larkin and the other similarly situated Plaintiffs included in the class, prior to issuing the insurance policy and through its term, that its insurance contracts included PIP benefits as those benefits are described in law. USAA represented that it would pay PIP coverages for a covered person involved in an auto accident, including reasonable fees for medically necessary and appropriate services. USAA promised these benefits within 30-days of proof of the claim. USAA made these promises in an effort to secure insurance contracts and premiums, and to avoid payment of contracted benefits so that USAA could enjoy the profit on unpaid benefits. In fact, USAA's insurance as actually administered does not provide these benefits, and certainly

does not provide them within 30-days as promised. The facts underlying this claim are described in Section 4, *supra*.

6.26 USAA further violated §541.051(1) each time its adjuster sought information that was unneeded under the Policy or that USAA already had. Because the terms of the Policy and the law governing the Policy do not require USAA to have ICD-9 codes, CPT codes, federal tax ID numbers, or other myriad data that is not related to the medical necessity and reasonableness of the charge, each request for such data misrepresents that the Policy does make such requirement.

6.27 USAA violated §541.060(1) by misrepresenting to Plaintiffs material facts or policy provisions. USAA misrepresented to its insured that USAA would pay medical bills as they were provided to USAA. USAA made these representations to the Named Plaintiffs and the other similarly situated Plaintiffs included in the class, prior to issuing the insurance policy and through its term, and during the claim process. These representations were knowingly false, as USAA did not intend to pay the benefits within 30-days, and intended to pay much less than reasonable medical fees. The facts underlying this claim are described in Section 4, *supra*.

6.28 USAA further violated §541.060(1) each time its adjuster sought information that was unneeded under the Policy, or that USAA already had. Because the terms of the Policy and the law governing the Policy do not require USAA to have ICD-9 codes, CPT codes, federal tax ID numbers, or other myriad data that is unrelated to the medical necessity and reasonableness of the charge, each request for such data misrepresents that the Policies do make such requirements.

6.29    USAA further violated §541.060(2) by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of PIP claims once the insurer's liability has become reasonably clear.  The facts underlying this claim as to Larkin are described in Section 4, *supra*.

6.30    USAA violated §541.060(3) by failing to promptly provide the Named Plaintiffs with a reasonable explanation of the basis in the Policies for the insurer's denial of their claims. None of the reasons given by USAA meet the requirements of § 541.060(3) because they do not refer to actually true facts, or the reasons relate to unknown defenses that are not found within the Policies, or are actually illegal under Texas law.

6.31    USAA violated §541.060(7) by refusing to pay The Named Plaintiffs' PIP claims without conducting a reasonable investigation. In fact, as detailed in the preceding paragraphs, USAA's investigations were pre-textual and unreasonable. For example, USAA did not conduct a reasonable investigation when it failed to consider the information it already had in making a reimbursement decision about Larkin's hospital bills.

6.32    AIS is an agent or contracting adjuster for USAA. Upon information and belief, the acts described in this section were perpetuated or participated in by AIS as an agent or contracting adjuster for USAA. AIS and USAA worked together in adjusting The Named Plaintiffs' PIP claims, with USAA requesting information it already had or did not need to be sent to AIS.

6.33    Defendants' conduct was committed knowingly because Defendants had actual awareness of the falsity, deception or unfairness of their acts and practices made the basis for the Named Plaintiffs' claim for damages under the TEXAS INSURANCE CODE.

6.34    Larkin gave USAA notice as required by §541.154 of the TEXAS INSURANCE CODE.

6.35    Defendants' conduct was producing cause of Plaintiffs' injuries.

### TEXAS INSURANCE CODE §542 ET. SEQ. VIOLATIONS – CLAIM AGAINST USAA

6.36    USAA violated Chapter 542 of the TEXAS INSURANCE CODE because it failed to do the following within the statutorily mandated time of receiving all necessary information:

(a)    Failing to give proper notice of the acceptance or rejection of part or all of Plaintiffs' claims;

…

(c)    Failing to accept or deny Plaintiffs' full and entire claim within the statutorily mandated time of receiving all information;

(d)    Failing to pay Plaintiffs' claim without delay; and,

…

(f)     Failing to include the requisite penalty interest on any and all payments made beyond the statutorily designated time to make payment in full for Plaintiffs' claim.

6.37    As described above, USAA has not given proper notice of the acceptance or rejection of part or all of Larkin's claim.

6.38    Likewise, USAA has failed to accept or deny Larkin's entire claim, thus necessitating this lawsuit.

6.39    USAA has failed to pay the claim without delay. As described at length above, delay is USAA's *modus operandi* in PIP claims. Moreover, it has done so specifically to benefit itself at the expense of its insured.

6.40    Nor has USAA paid the penalty interest now owed on the unpaid PIP benefits.

6.41    Such failures constitute violations of the TEXAS INSURANCE CODE §§ 542.055, 542.056, 542.057, and 542.058. As a result of the forgoing violations, Larkin request damages under TEXAS INSURANCE CODE § 542.060.

### BREACH OF THE DUTY OF GOOD FAITH & FAIR DEALING – CLAIM AGAINST USAA

6.42    USAA, as the Named Plaintiffs' insurer, owed the Named Plaintiffs a duty of good faith and fair dealing.

6.43    USAA breached this duty by unreasonably and unfairly delaying and denying payment once liability was reasonably clear. As discussed at length above, USAA had all of the information needed to promptly and fairly resolve Larkin's claim in

accordance with the law. It refused to do so. Details of these allegations are described in the foregoing paragraphs, and are incorporated herein by reference. Although it was reasonably clear that Larkin's claims are covered by the Policy, Defendant failed to pay the claims or conduct more than a sham, pretextual investigation with the goal of denying Larkin's PIP claims. As a result of USAA's breaches of the duty of good faith and fair dealing, the Named Plaintiffs have been deprived of their PIP benefits for years.

6.44    Upon information and belief, this same pattern of unreasonable and unfair claim delay and denial is par for the course for USAA. The Named Plaintiffs' counsel is personally aware of other USAA insureds who have had similar frustrations with USAA's PIP claims handling. Upon information and belief, there are numerous attorneys in the state of Texas who represent policyholders against USAA in the PIP context and find that USAA's treatment of the Named Plaintiffs is typical of its treatment of its insureds.

## VII. ATTORNEY'S FEES

7.01    As a result of Defendants' conduct, Plaintiffs have been forced to retain an attorney to seek justice in this Court. Accordingly, Plaintiffs are entitled to recover reasonable and necessary attorney's fees incurred in this action pursuant to TEX. CIV. PRAC. & REM. CODE §38.001, DTPA §17.50(d), and TEXAS INSURANCE CODE §541.152.

## VIII. DAMAGES

8.01    Plaintiffs are entitled to the following:

(a)    Their wrongfully denied PIP benefits;

(b)    Penalty interest of 12% under TEX. INS. CODE §1952.157;

<ol type="a" start="3">
<li>

(c)    Additional damages as the trier-of-fact determines under TEX. INS. CODE sections 541 and 542 including but not limited to treble damages and statutory interest;

(d)    Economic damages;

(e)    Mental anguish damages;

(f)    Exemplary damages;

(g)    Pre-Judgment interest, Post-Judgment Interest and Costs of Court; and,

(h)    Attorney's fees.
</li>
</ol>

## IX. DISCOVERY

9.01   Pursuant to TEX. R. CIV. P. 194, Plaintiffs have previously requested that Defendants disclose to Plaintiffs, at the office of the undersigned counsel for Plaintiffs, all information or material described in Rule 194.2 within 50 days of service of citation.

## X. JURY DEMAND

10.01  Plaintiffs demand a trial by jury and have tendered the appropriate fee.

## PRAYER

Wherefore Plaintiffs pray that USAA and AIS be cited to appear and answer herein and that upon final hearing they be awarded their just economic damages, actual damages, statutory interest penalties, treble damages, exemplary damages, mental anguish damages, additional damages, pre-judgment and post-judgment interest, attorney's fees, cost of court, and such other relief as they may show themselves entitled. As required by Rule 47(b), TEXAS RULES OF CIVIL PROCEDURE, Plaintiffs' counsel states that the damages sought are in an amount within the jurisdictional limits of this Court. As

required by Rule 47(c), TEXAS RULES OF CIVIL PROCEDURE, Plaintiffs' counsel states that Plaintiffs seek monetary relief over $1,000,000. The amount of monetary relief actually awarded, however, will ultimately be determined by a jury.

Respectfully submitted,

**WYLY & COOK, PLLC**

By: _/s/ B.T. Wyly_
       Brad T. Wyly
       State Bar No. 24042198
       Kelly E. Cook
       State Bar No. 24062675
4101 Washington Ave.
Houston, Texas 77007
(713) 236-8330 Telephone
(713) 863-8502 Telefax
*bwyly@wylycooklaw.com*

**DAVIS LAW GROUP**

By: _/s/ J.P. Davis_
       Joshua P. Davis
       State Bar No. 24055379
       Jason E. Beesinger
       State Bar No. 24092107
1010 Lamar, Suite 200
Houston, Texas 77002
(713) 337-4100/Phone
(713) 337-4101 /Fax
*josh@thejdfirm.com*
*jason@thejdfirm.com*

**Attorneys for Plaintiffs and the Putative Class**

# Exhibit "1"

Daniel J. Gatti, OSB 73103
Ron L. Sayer, OSB 95191
GATTI, GATTI, MAIER, SAYER,
THAYER, SMITH & ASSOC.
1781 Liberty Street SE
Salem, OR 97302
Tel: (503) 363-3443
Fax: (503) 371-2482
DJGatti@Comcast.net
JHunking@Gattilaw.com
JClifford@Gattilaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARGARET SOUKUP; BRITTNEY BATHURST; AMBER DEMERITT; and SAMANTHA JONES, <br><br> Plaintiffs, <br><br> v. <br><br> USAA CASUALTY INSURANCE COMPANY, a foreign insurer; UNITED SERVICES AUTOMOBILE ASSOCIATION, a foreign intrainsurance exchange; USAA GENERAL INDEMNITY COMPANY, a foreign insurer; USAA COUNTY MUTUAL INSURANCE CORPORATION, a foreign insurer; GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, a foreign insurer; AUTO INJURY SOLUTIONS, INC., a foreign corporation; DR. CLARK H. WOLF, III, D.C.; and DR. ROSS HART, D.C. <br><br> Defendants. | Case No.: <br><br><br> **CLASS ACTION COMPLAINT** <br> **1. Breach of Contract** <br> **2. Breach of the Covenant of Good Faith and Fair Dealing** <br><br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs, by and through their attorneys, bring this action on their own behalf and on

behalf of all other similarly situated military personnel, veterans, and their families, who were

insured through USAA, and its affiliates, and allege as follows:

## NATURE OF THE ACTION

1.    This is a class action suit on behalf of active members of the military, honorably

discharged veterans, and their families, against defendants USAA Casualty Ins. Co.,

United Services Automobile Assoc., USAA General Indemnity Co., USAA County

Mutual Ins. Corp., Garrison Property and Casualty Ins. Co., (collectively hereinafter

"USAA"), Auto Injury Solutions, Inc. ("AIS"), Chiropractor, Clark Wolf, III, and

Chiropractor, Ross Hart, seeking relief on behalf of a class of insureds and parties

covered by first-party insurance policies issued by USAA.

2.    In short, this is a class action against Defendants for their implementation of an

undisclosed cost containment scheme which wrongfully deprives U.S. military

servicemen, women, and their families, of insurance benefits for medical treatment.

USAA represented to U.S. service men and women that USAA would pay for reasonable

and necessary medical expenses in the event of an automobile injury, thereby inducing

Plaintiffs and other U.S. service men and women, into contracting with USAA for first-

party insurance.  When Plaintiffs suffered injuries, they sought reasonable and necessary

medical care which USAA promised to pay for.  However, Plaintiffs' medical treatment

was then wrongfully denied by USAA on the basis of fraudulent file reviews in order to

deprive Plaintiffs, and those like them, of their medical treatment and thereby save USAA

money at the expense of servicemen and women, and their families.

## JURISDICTION AND VENUE

3.    This Court has original jurisdiction of the claims asserted herein pursuant to 28 U.S.C. §

1332(d)(2)(A) because the amount in controversy and the claims at issue exceed the sum

of $5,000,000, exclusive of interests and costs, and is a putative class action in which members of the class are plaintiffs who are citizens of states different from the Defendants' states of citizenship.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  Defendants USAA and AIS transact substantial business in this District and maintain their agents or representatives, Chiropractor, Clark H. Wolf, III, and Chiropractor, Ross Hart, in this District. Defendants USAA and AIS regularly and continuously conduct business in interstate commerce that is carried out in substantial part in this District.  In addition, many of the acts and transactions giving rise to the claims asserted herein occurred in this District.

## THE PARTIES

## PLAINTIFFS

### (Margaret Soukup)

5.     At all times material hereto, Plaintiff Margaret Soukup was and remains a resident of Clatsop County, Oregon.  Margaret Soukup was, and is, an active member of the armed services and was induced into selecting USAA as the insurer for her and her family, based on USAA's representations that USAA was committed to taking care of and supporting members of the armed services and U.S. veterans.  USAA touted its commitment to servicing military families and advertised the "exclusive privileges of its auto insurance," noting that, "For those who stood tall for this country and for their families, we stand ready to return the favor."  Exhibit 1.  During the proposed Class Period, Plaintiff Soukup was insured with USAA for Personal Injury Protection benefits ("PIP").  During the proposed Class Period, Soukup performed all conditions precedent to maintaining her PIP

coverage with USAA, including paying her insurance premiums and performing all other required duties, with the understanding that by doing so USAA would cover her and her family in the event they were injured.

6.     Plaintiff Soukup was involved in an automobile collision on September 15, 2009, on Highway 30 in Oregon.  As Margaret Soukup slowed and stopped for traffic, she was suddenly rear-ended, jolting her body and vehicle forward, causing her vehicle to then slam into the vehicle in front of her.  During these collisions, Margaret's body was whipsawed backwards and forwards, causing injuries to her neck and back.  Her vehicle sustained substantial damage during the collisions.  In accordance with the terms of her policy, Plaintiff Soukup notified USAA of her accident and submitted a claim for PIP benefits.

7.     As a result of the collision, Plaintiff Soukup was injured and sought medical treatment with the understanding that USAA would pay for treatment which was reasonable and necessary.

8.     Plaintiff Soukup and her medical providers did what was requested of them by USAA and submitted to USAA bills for treatment of Plaintiff Soukup.  USAA, in turn, referred Plaintiff Soukup's claim to Auto Injury Solutions for "file reviews" without Soukup's knowledge and without disclosing that USAA held a relationship with AIS to prepare "file reviews" which would uniformly conclude that medical treatment was not needed. In Soukup's case, AIS prepared 8 sham file reviews, all concluding that treatment should be denied.  Four such reviews were purportedly created by a Chiropractor, Clark H. Wolf III, D.C., a chiropractor in Medford, Oregon (Exhibits 2-5); three from a James

Blumenthal, D.O., a doctor in Florida (Exhibits 6-8); and one from Pejman Lavian, M.D., a doctor in Clifton, New Jersey. (Exhibits 9).

9. USAA and AIS's sham file reviews were then used as the basis for AIS and USAA to wrongfully deny Plaintiff Soukup's PIP benefits. Defendants damaged Soukup by refusing to pay for her reasonable and necessary health care expenses which USAA is contractually obligated to pay. Plaintiff Soukup has been further damaged by Defendants in that their denial of her medical treatment prevents Soukup from making a full recovery from her injuries. Plaintiff Soukup has also been damaged in that she was forced to retain an attorney to pursue her claim against the tortfeasor in her automobile collision claim, and was forced to pay her retained attorney a contingency fee which included a fee on the sums recovered for Plaintiff Soukup's outstanding medical bills – medical bills which should have been paid for by USAA had USAA not wrongfully denied her PIP benefits.

**(Brittney Bathurst)**

10. At all times material hereto, Plaintiff Brittney Bathurst was a resident of Chisago County, Minnesota, and is currently a resident of Maricopa County, Arizona. During the proposed Class Period, Plaintiff Bathurst was insured with USAA for PIP benefits under her mother's policy. Bathurst's mother, Susan Bathurst, was a veteran of the U.S. armed services and Susan Bathurst entered the U.S. Army Reserves in 1981, retiring in 2005 after serving in operations such as Desert Storm, Enduring Freedom (Iraq War) and receiving decorations such as the Air Force Achievement Award, National Defense Service Medal and Army Overseas Service Ribbon. She was honorably discharged. As a result of her military service, Susan Bathurst was told that she and her family qualified for

USAA insurance and Bathurst was then induced into contracting with USAA for automobile insurance based on USAA's representations that it was committed to serving U.S. veterans. During the proposed Class Period, Plaintiff Bathurst and her mother performed all conditions precedent to maintaining her PIP coverage with USAA, including paying all premiums and otherwise performing all required duties, with the understanding that by doing so, reasonable and necessary health care expenses would be paid by USAA in the event of an injury suffered in an automobile collision.

11.     At age 17, plaintiff Brittney Bathurst was involved in an automobile collision on June 30, 2007, when she was traveling as a passenger and was "T-boned" by a jeep traveling at a very high rate of speed, totaling the vehicle in which Brittney was riding. Airlife, police, fire, and other emergency responders were deployed to the scene of the near death collision. Ultimately Bathurst was taken to a nearby hospital by ambulance. The accident occurred in Chisago City, Minnesota. In accordance with the terms of her policy, Plaintiff Bathurst notified USAA of her accident and submitted a claim for PIP benefits.

12.     As a result of the collision, Plaintiff Bathurst was injured and sought reasonable and necessary health care based on the representations USAA made to her mother that as a military service woman, she and her family members, including Plaintiff Bathurst, would be covered in the event of an accident and reasonable and necessary health care expenses would be paid for.

13.     Plaintiff's medical providers submitted bills for their treatment of Plaintiff Bathurst to USAA. USAA, in turn, referred Plaintiff Bathurst's claim to Auto Injury Solutions for a

"file review," without Bathurst's knowledge and without disclosing that USAA held a relationship with AIS to prepare "file reviews" which would uniformly conclude that treatment should be denied. AIS prepared a sham file review, purportedly created by a Leslie Kancir, an acupuncturist located in Lakewood, Colorado (Exhibit 10).

14. In Exhibit 10, one will readily note that Kancir's signature is an "electronic" signature. Note also that the report states in no uncertain terms that "A Physician Review has been completed." Said statement is absolutely false at the time of writing the review. See also the so-called criteria/sources referenced as justification for the ultimate conclusion that the reimbursement of health care services should be denied. The authorities are immaterial and not reliable with reference to the individualized injuries and subsequent care needed by Brittney Bathurst. Compare Exhibits 11–13, which are all purportedly reviews written and signed by the one and same Leslie Kancir, an acupuncturist from Colorado.

15. In the additional Exhibits 11–13, victim reviews are again "electronically" signed by acupuncturist Leslie Kancir, each contain the false statement that "A Physician Review has been completed," and each rely on so-called source or criteria references that are immaterial and not reliable as to the individual injuries suffered by additional victims in separate collisions, on separate dates. Each review appears to be an authentic, individualized medical review when clearly each is not.

16. AIS's sham file review of Brittney Bathurst was used as the basis for AIS and USAA to deny Plaintiff Bathurst's acupuncturist care which was subsequently incurred in Arizona. Defendants damaged Bathurst by refusing to pay for her reasonable and necessary

expenses which USAA was contractually obligated to pay. Plaintiff Bathurst has been further damaged by Defendants in that Bathurst must incur and pay for health care expenses out of her own resources, which, if not done, will prevent Bathurst from making a full recovery from her injuries.

**(Amber DeMerritt)**

17. At all times material hereto, Plaintiff Amber DeMerritt was and remains a resident of Clackamas County, Oregon. During the proposed Class Period, Plaintiff DeMerritt's husband was in active military service, serving in places such as Texas and Kuwait. As a result of her marriage to an active serviceman, DeMerritt was induced into being insured with USAA for PIP benefits, based upon USAA's representations that it would pay the medical bills of U.S. servicemen and their families. During the proposed Class Period, Plaintiff DeMerritt performed all conditions precedent to maintaining her PIP coverage with USAA, including paying all premiums and performing other required duties, with the understanding that by doing so USAA would pay the medical bills of DeMerritt in the event she was injured in an automobile accident.

18. Plaintiff DeMerritt was involved in a serious automobile collision on October 25, 2010, on Dryland Road in Clackamas County, Oregon. Plaintiff DeMerritt slowed for a passing vehicle when she was suddenly rear-ended, forcing her vehicle into a spin during which it was impacted yet again, while the other driver's vehicle was caused to rollover. *See* Exhibits 14-15 depicting vehicle damage. In accordance with the terms of her policy, Plaintiff DeMerritt notified USAA of her accident and submitted a claim for benefits incurred for injuries sustained as a result of a collision.

**COMPLAINT**

19.     As result of the collision, Plaintiff DeMerritt was injured and sought medical treatment based on the representations USAA made that she would be covered in the event of an accident and would be taken care of.

20.     Plaintiff's medical providers submitted bills for their treatment of Plaintiff DeMerritt to USAA.  USAA, in turn, referred Plaintiff DeMerritt's claim to Auto Injury Solutions for "file reviews" without DeMerritt's knowledge and without disclosing that USAA held a relationship with AIS to prepare "file reviews" which would uniformly conclude that treatment should be denied.  USAA and AIS prepared at least four sham file review Reports, purportedly created by a George D. Sage, a chiropractor in Decatur, Georgia (Exhibits 16-19).

21.     AIS's sham file reviews were used as the basis for AIS and USAA denying Plaintiff DeMerritt's PIP claim.  Defendants damaged DeMerritt by refusing to pay for her reasonable and necessary medical expenses which USAA is contractually obligated to pay.  Plaintiff DeMerritt has been further damaged by defendants in that their denial of her medical treatment prevents her from making a full recovery from her injuries.

**(Samantha Jones)**

22.     At all times material hereto, Plaintiff Samantha Jones resided in King County, Washington, and currently is a resident of Washington County, Oregon.  During the proposed Class Period, Plaintiff Jones was insured with USAA for PIP benefits because her step-father was a serviceman within the U.S. military.  During the proposed Class Period, Plaintiff Jones performed all conditions precedent to maintaining her PIP coverage with USAA, including paying all premiums and performing other required

duties, with the understanding that by doing so USAA would in turn take care of Jones in the event of an accident.

23. Plaintiff Jones was involved in an automobile collision occurring on February 10, 2009, in Renton, Washington. Plaintiff Jones's vehicle was struck by a driver who failed to stop at a stop sign. In accordance with the terms of her policy, Plaintiff Jones notified USAA of her accident and submitted a claim for PIP benefits.

24. As result of the collision, Plaintiff Jones was injured and sought medical treatment based on the representations USAA made that she would be covered in the event of an accident and would be taken care of.

25. Plaintiff's medical providers submitted bills for their treatment of Plaintiff Jones to USAA. USAA, in turn, referred Plaintiff Jones's claim to Auto Injury Solutions for "file reviews" without Jones's knowledge and without disclosing that USAA held a relationship with AIS to prepare "file reviews" which would uniformly conclude that treatment should be denied. AIS prepared nine sham file reviews, five of which were purportedly created by Ross, Hart, D.C., a chiropractor in Springfield, Oregon (Exhibits 20-24); three from John T. Murphy, D.C. (Exhibits 25-27); and one from Clark H. Wolf III, D.C., a chiropractor in Medford, Oregon (Exhibit 28).

26. AIS's sham file reviews were used as the basis for AIS and USAA denying Plaintiff Jones's PIP claim. Defendants damaged Jones by refusing to pay for her reasonable and necessary medical expenses which USAA is contractually obligated to pay. Plaintiff Jones has been further damaged by Defendants in that their refusal to pay her reasonable and necessary medical expenses prevented her from making a full recovery from her

injuries. Plaintiff Jones has also been damaged in that she was forced to retain an attorney to pursue her claim against the tortfeasor, and was forced to pay her retained attorney a contingency fee which included a fee on the sums recovered for Plaintiff Jones's outstanding medical bills – medical bills which should have been paid for by USAA had it not wrongfully denied her PIP benefits.

## **DEFENDANTS**

27. At all times material hereto, Defendant USAA Casualty Insurance Company was and is a foreign insurer licensed to transact insurance business in the state of Oregon and other states.

28. At all times material hereto, Defendant United Services Automobile Association was and is a reciprocal interinsurance exchange organized under the laws of Texas, and transacts business in the state of Oregon and other states.

29. At all times material hereto, Defendant USAA General Indemnity Company was and is a foreign insurer organized under the laws of Texas, and licensed to transact insurance business in the state of Oregon and other states.

30. At all times material hereto, Defendant USAA County Mutual Insurance Company was and is a foreign insurer organized under the laws of Texas, and transacts business in the state of Oregon and other states.

31. At all times material hereto, Defendant Garrison Property and Casualty Insurance Company was and is a foreign insurer organized under the laws of Texas, and licensed to transact insurance business in the state of Oregon and other states.

32. The foregoing defendant entities are hereinafter referred to collectively as "USAA."

33. At all times material hereto, upon information and belief, Auto Injury Solutions, Inc., ("AIS") was and is a foreign corporation, organized under the laws of Alabama, and conducting business in Oregon and other states.

34. At all times material hereto, upon information and belief, Clark H. Wolf, III, is a chiropractor licensed in the State of Oregon, and practicing or residing in Medford, Oregon. Wolf performs countless file reviews for USAA and AIS which affect insureds all over Oregon and other states in the nation.

35. At all times material hereto, upon information and belief, Ross Hart, is a chiropractor licensed in the State of Oregon, and practicing or residing in Albany and Bend, Oregon. Dr. Wolf performs countless file reviews for USAA and AIS which affect insureds all over Oregon and other states in the nation.

## CLASS ACTION ALLEGATIONS

36. Defendant USAA offered and sold a form of first-party medical coverage that provides payment to covered persons for "reasonable and necessary" medical expenses incurred by the insured for bodily injury(ies) resulting from a covered automobile accident. This coverage is commonly referred to as Personal Injury Protection ("PIP") and/or Medical Payments ("Med Pay") coverage. PIP and Med Pay is commonly referred to as "no-fault coverage." *See* Exhibits 29-30 as example policies sold by USAA.

37. Defendant USAA did offer PIP and/or Med Pay coverage to its insureds in states across the country, including Oregon, Washington, Arizona, Minnesota, and other states in which Defendants conduct business.

///

**COMPLAINT**

38. Plaintiffs, and all others similarly situated, contracted for and paid premiums to maintain PIP and/or Med Pay coverage with USAA, with the understanding that USAA would "be there to take care" of Plaintiffs. Exhibit 31. Plaintiffs were induced into contracting with USAA because of their status as active or honorably discharged members of the U.S. armed services, or by being a family member of such a service member.

39. Under the terms of the policies, defendant USAA assumed the responsibility and obligation to pay all reasonable and necessary medical expenses incurred for the treatment of injuries sustained in an accident.

40. During the proposed Class Period, USAA adopted an undisclosed and wrongful cost containment program through which USAA seeks to arbitrarily reduce PIP and/or Med Pay benefits for claims submitted by its insureds. This cost containment program operates to uniformly reduce or deny medical claims which are incurred as a result of automobile collisions causing injuries for which insureds seek out reasonable and necessary care.

41. USAA contracted with an apparent third party provider, Auto Injury Solutions, Inc., to assist USAA in implementing and carrying out its fraudulent cost containment program under the guise of AIS providing "independent" and impartial medical review services. In reality, AIS serves at the direction of USAA, and/or as the alter ego of USAA, in that AIS's services are not rendered independently and are focused on generating false and misleading reports in order to save USAA millions of dollars at the expense of military personnel and their family members who have been injured in automobile collisions and whose bills were reasonable and necessarily incurred.

42.     USAA has entered into an agreement in which its PIP and/or Med Pay claims are sent to AIS for review and/or claims handling. AIS serves as USAA's agent. Insureds and their health providers are instructed to send information, including appeals, to AIS's address in Daphne, Alabama, and not to USAA claims handling locations scattered throughout the United States.

43.     The purported medical review services provided by AIS are a sham. The records review reports ("Reports") generated by Auto Injury Solutions are purportedly created by physicians whom AIS contracts with to provide "independent" medical record review services in order to give the appearance of legitimacy, when, in fact, such appearance is false and fraudulent.

44.     The Reports purportedly created by defendants Clark H. Wolf and Ross Hart are sham, contain false information, and fail to comply with applicable Oregon statutes, administrative rules, and practice and utilization guidelines which are adopted and controlling the standard of care in Oregon..

45.     Defendants create the Reports by utilizing template forms. Defendants utilize an electronic signature stamp on each Report in order to give the false impression that a physician created and approved each Report. In reality, each report generated is substantially the same in reaching the uniform conclusion that benefits should be denied. These reports utilize identical and the same conclusionary language (including typographical errors) despite the impression that each report is supposedly created for different claimants. Furthermore, for several Plaintiffs and Class members, the reports are cut and paste papers, merely duplicating exactly what was said in other reports

generated for the same insured.  Compare Exhibits 6-8 and 32 which were purportedly created by Dr. James Blumenthal, D.O.  Compare Exhibits 20-24 and 33 which were purportedly created by Ross Hart, D.C.  Compare Exhibits 2-5, 34-37 which were purportedly created by Clark Wolf III, D.C.

46.    The Reports prepared by AIS uniformly deny that the treatment received by the insureds is reasonable and necessary.  These Reports are without basis and are not supported by proper sources, criteria, or medical authority.  The Reports are fraudulent and are designed to save defendants substantial money for health expenses already contracted and paid for by servicemen and women, veterans and their families.  Because of defendants' phony reviews, plaintiffs and the class members' medical care was affected and denied, and such claims were generally in the range of $500 to $10,000 per collision and claim. The Reports are inconsistent with, and unsupported by the very medical records which they purport to review.  The Reports uniformly recommend denial of submitted claims without reasonable, individualized medical basis and without individualized appropriate investigation into, or consideration of, the reasonableness or necessity of the insureds' medical treatment.

47.    Defendants maintain a list or database of purported "authorities" to cite when generating file and peer review reports to give the appearance that the Reports' conclusions are medically supported.

48.    Defendants deny claims for PIP and/or Med Pay benefits on the Reports.  Defendants do not conduct a separate investigation, review, or otherwise seek to confirm the opinions

expressed in the Reports.  Defendants uniformly deny claims submitted to AIS and subjected to an AIS Report.

49.     USAA's denial of PIP and/or Med Pay claims is based upon fraudulent and sham records review reports generated by AIS at USAA's direction, or with USAA's knowledge and consent.  USAA knew of AIS's fraudulent system of generating reports and encouraged it, knowing that USAA would gain financially if the reports denied care, and disregarding that it was breaching its promise of serving the men and women of the military who served this nation.

50.     Defendants' denial of PIP and/or Med Pay claims are not based upon legitimate determinations of reasonableness or necessary care.  As a result, USAA's claims handling and denials do not abide by its own policy terms.

51.     Defendants' aforesaid utilization of its undisclosed cost containment program to reduce first-party medical benefits is presumptively unreasonable and in breach of USAA's obligations to pay all reasonable and necessary medical expenses incurred by covered persons.

52.     Any medical expenses not paid under defendant USAA's PIP and/or Med Pay coverages by reason of its undisclosed cost containment program are, *ipso facto*, presumptively reasonable and necessary, valid, and are owed by USAA to plaintiffs and all others similarly situated under the terms of its contract with its insureds.

53.     Defendants' actions in utilizing its cost containment program to unilaterally reduce or deny health care expenses submitted for payment under PIP and/or Med Pay coverage, constitute a presumptive breach of USAA's implied duty of good faith and fair dealing,

including its obligation to conduct a full and fair evaluation of each claim and to not

unreasonably deny or withhold benefits.  The Reports and USAA's denials contain

nothing more than language that the medical treatment is not reasonable and not

necessary.  This determination is unsupported by USAA and AIS.  Furthermore,

Defendants' denials rely upon opinions rendered by physicians who are not of the same

speciality, license, or certification as the treating physicians, whose records they are

purportedly reviewing.

## CLASS DEFINITIONS

54.     There exists a class of persons, who are insureds of defendant USAA with PIP and/or

Med Pay coverage.  Such insureds are "members" of USAA, who have "honorably

served" in branches of the U.S. military, or are covered by a policy as a result of a family

member who served.

55.     This class ("Class") is, or can be initially, defined as follows:

a.      All persons who, within applicable statutory limitations periods, were injured in
        automobile accidents while a driver or passenger in an automobile insured by
        USAA, or who were members/insureds of USAA and whose policy covered them;
        and
b.      The insurance policy provided by USAA covered MedPay, PIP, First Party
        Benefits, Medical Expense Benefits, Automobile Death and Disability, or any
        other first-party medical coverage (collectively referred to as "Medpay"); and
c.      Who submitted claims for Medpay benefits within January 1, 2005, through the
        present, and
d.      Who had bills for health care expenses submitted to review by Auto Injury
        Solutions, or its parents, subsidiaries or affiliates, which recommended denial of
        payment and/or partial denial of payment, based upon:
        i.      A written AIS "Physician Review," and
        ii.     USAA denied payment of all, or a portion, of benefits based upon AIS's
                recommendation.

56.     In addition to the foregoing national Class, there is a subclass of Oregon insureds

("Oregon Subclass") which may be defined as follows:

a.  All persons who, within the past six years, were injured in automobile accidents while a driver or passenger in an automobile insured by USAA under an Oregon Policy, or who were members/insureds of USAA under an Oregon Policy, and whose PIP policy covered them; and

b.  Who submitted claims for PIP benefits within January 1, 2005, through the present, and

c.  Who had bills for health care expenses submitted to review by Auto Injury Solutions, or its parents, subsidiaries or affiliates, which recommended denial of payment and/or partial denial of payment, based upon:
    i.  A written AIS "Physician Review," and
    ii. USAA denied payment of all, or a portion, of benefits based upon AIS's recommendation.

57.  This action is brought and may properly be maintained as a class action.

58.  The proposed Class and Oregon Subclass is so numerous that the individual joinder of all members is impracticable under the circumstances of this case. While the exact number of class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe that the proposed Class and Oregon Subclass include hundreds, if not thousands of members throughout the United States.

59.  Class treatment is appropriate in this case because (1) it involves the legality of uniform policies and practices that defendants applied to all members of the proposed Classes; and (2) there are numerous common questions of law and fact that exist as to all members of the proposed Classes which predominate over any questions that affect only individual members of the proposed Class and Oregon Subclass. These common legal or factual questions include:

a.  Whether the file reviews created by AIS are in fact individually written by appropriate physicians, or by the physicians who purportedly sign them.

**COMPLAINT**

b.     Whether the claims denials by USAA and AIS are the product of false and inappropriate claims handling and/or investigative techniques.

c.     Whether USAA unreasonably put its own interests ahead of that of its insureds.

d.     The meaning of the policy's terms "reasonable and necessary."

e.     Whether USAA's denial of PIP benefits constitutes a breach of contract.

f.     Whether USAA's breach of contract met USAA's obligation of good faith and fair dealing.

g.     For the Oregon Subclass, whether USAA has breached its contract with Oregon policyholders by basing their denials on File Reviews which contradict the applicable practice and utilization guidelines for treating physicians.

60.     Plaintiffs' claims are typical of the proposed Class and Oregon Subclass members' claims. Plaintiffs and the Classes purchased or were covered by PIP and/or Med Pay insurance offered by USAA. Plaintiffs and the Classes were physically injured in covered accidents or events, and sought medical treatment as a result. Plaintiffs and the Classes sustained injuries arising out of Defendants' common course of conduct of denying their PIP or MedPay claims based on false Reports. Plaintiffs are, therefore, no different in any material respect from any other Class or Subclass member, and the relief sought is common to the Class and Oregon Subclass.

61.     Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class and Oregon Subclass. Plaintiffs are adequate representatives of the Classes and have no conflict or adverse interest to the proposed Classes.

///

62.     All claims on behalf of the proposed Class and Oregon Subclass, including the claims of the Plaintiffs, arise from the same scheme and practice and are based on the same legal theories.  The issues that affect Plaintiffs and the proposed Classes predominate over those that affect only individual members of the proposed Class and Oregon Subclass.

63.     A class action is a superior means for a fair and efficient adjudication of the matters at issue because individual joinder of all members of the proposed Class and Oregon Subclass is impracticable.  Additionally, the damages suffered by any individual member of the proposed Classes may be relatively small, making the burden and expense of individual litigation difficult or prohibitive.  Furthermore, the nature of the alleged cost containment scheme orchestrated by the defendants is such that individual class members may be unaware of the fraud and thus unaware that their legal rights have been violated.  Moreover, individual adjudication of claims of the members of the proposed Classes presents the possibility of inconsistent and contradictory judgments.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Breach of Contract)

64.     Plaintiffs hereby repeat, re-allege, and restate the foregoing as if fully set forth herein.

65.     The policies of insurance between defendant USAA and Plaintiffs, either directly or through proper assignment, constitute lawfully binding contracts.

66.     Plaintiffs have paid their premiums to defendant USAA in order to maintain PIP and/or Med Pay coverage, and have otherwise satisfied all other conditions precedent.

*///*

**COMPLAINT**

67.    Plaintiffs have been injured in a covered event and have demanded performance under the contracts.  Defendant USAA's failure to perform as required under the contract constitute a breach thereof.

68.    Defendants USAA, AIS, Dr. Clark Wolf, III, and Dr. Ross Hart, engaged in the same course of conduct in applying the cost containment scheme to Plaintiffs, and members of the Class and Oregon Subclass, and did breach the contract with Plaintiffs, and members of the Class and Oregon Subclass, by denying payment of PIP and/or Med Pay claims without regard or determination of the reasonableness or necessity of the treatment received.

69.    For the Oregon Subclass, Defendants USAA, AIS, Dr. Clark Wolf, III, and Dr. Ross Hart denied PIP benefits without regard to Oregon statute, Oregon Administrative Rules, and Oregon practice and utilization guidelines, and therefore, Defendants' denials are presumptively unreasonable and constitute a breach of contract.

70.    Plaintiffs have sustained actual damages as a result of defendants USAA and AIS's breach.

71.    Plaintiffs are entitled to reasonable attorneys' fees under O.R.S. 742.061 and other applicable states' statutes.

<u>**SECOND CAUSE OF ACTION**</u>

**(Breach of Covenant of Good Faith and Fair Dealing ("Bad Faith"))**

72.    Plaintiffs Brittney Bathurst and Samantha Jones hereby repeat, re-allege, and restate the foregoing as if fully set forth herein.

///

73. Defendants USAA, AIS, and Dr. Ross Hart, at all relevant times, owed and continue to owe Plaintiffs, and all others similarly situated, an implied duty of good faith and fair dealing.

74. Defendants USAA, AIS, and Dr. Ross Hart's actions were in breach of the duty of good faith and fair dealing, and therefore constitute "bad faith."

75. Defendants USAA, AIS, and Dr. Ross Hart's bad faith conduct consists of, but is not limited to:

    a.    Failing to fully, fairly and promptly investigate Plaintiffs' claims;

    b.    Unreasonably denying and/or withholding benefits under the policy;

    c.    Uniformly misconstruing policy language against Plaintiffs;

    d.    Wrongfully reducing or denying benefits due and payable under the policy;

    e.    Creating unreasonable burdens for payment and benefits; and

    f.    Engaging in a pattern and practice of similar bad faith claims handling practices.

    g.    Violating applicable state statutes and administrative rules, including, but not limited to RCW 48.30.015 and WAC 284-30-330, and their equivalents in other states, and by engaging in unfair practices by violating WAC 284-30-395.

76. Plaintiffs and the members of the proposed Class have sustained actual damages as a result of Defendants' bad faith conduct.

77. Defendants' actions entitle Plaintiffs Bathurst and Jones, and others similarly situated, to payment or reimbursement of legally incurred but unpaid medical expenses.

///

///

78. Defendants' actions further entitle Plaintiffs Bathurst and Jones, and others similarly situated, to an award of general and consequential damages for Defendants' bad faith conduct.

79. Defendants' actions were undertaken with ill intent and/or in conscious disregard for the harm to be caused to the Plaintiffs and others similarly situated.

80. Defendants' actions, for the reasons afore-mentioned, further entitle Plaintiffs Bathurst and Jones, and others similarly situated to an award of punitive damages.

81. Plaintiffs are also entitled to their reasonable attorneys' fees pursuant to applicable states' statutes.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class, request judgment and relief on all causes of action as follow:

AS TO THE FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT:

a. An order certifying that this action is properly brought and may be maintained as a Class Action under FRCP 23, that Plaintiffs be appointed as Class Representatives, and Plaintiffs' counsel be appointed Class Counsel.

b. A judgment entered against Defendants, jointly and severally, and in favor of Plaintiffs and each member of the Class they represent, determining that Defendants have breached their contracts with Plaintiffs and the proposed Class and Oregon Subclass;

c. For an award of the actual damages sustained thereby;

///

**COMPLAINT**

d.      For Plaintiffs' reasonable fees and costs, pursuant to ORS 742.061 and other states' applicable law; and

e.      For such additional and further relief as the court deems proper.


AS TO THE SECOND CAUSE OF ACTION FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING ("BAD FAITH"):

a.      An order certifying that this action is properly brought and may be maintained as a Class Action under FRCP 23, that Plaintiffs Bathurst and Jones be appointed as Class Representatives, and Plaintiffs' counsel be appointed Class Counsel.

b.      A judgment entered against Defendants, jointly and severally, and in favor of Plaintiffs and each member of the Class they represent, determining that Defendants have breached their covenant of good faith and fair dealing with Plaintiffs Bathurst and Jones, and the proposed Class;

c.      For an award of the actual damages sustained thereby;

d.      For an award of general compensatory damages sustained thereby;

e.      For an award of punitive damages sustained thereby;

f.      For Plaintiffs' reasonable fees and costs, pursuant to R.C.W. § 48.30.015 and other states' applicable laws; and

g.      For such additional and further relief as the court deems proper.

///

///

///

          **COMPLAINT**

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues which may be so tried.

DATED this ___ day of May, 2011.

_____
Daniel J. Gatti, OSB 731036
Ron L. Sayer, OSB 95191
GATTI, GATTI, MAIER, SAYER,
THAYER, SMITH & ASSOC.
1781 Liberty Street SE
Salem, OR 97302
Tel: (503) 363-3443
Fax: (503) 371-2482
DJGatti@Comcast.net
JHunking@Gattilaw.com
JClifford@Gattilaw.com

Counsel for Plaintiffs

# Exhibit "2"

# USAA sued over claims

BY PATRICK DANNER
PDANNER@EXPRESS-NEWS.NET
: MAY 12, 2011 : Updated: May 12, 2011 7:53pm

USAA once again is defending itself against
charges it utilizes a "cost containment program"
to improperly reduce or deny medical payouts to
insurance customers injured in auto accidents.

Comments 0        E-mail        Print

Recommend  8     Tweet  3      0

The latest claims against the San Antonio financial and insurance company were made in a federal
lawsuit filed this week in Oregon.

The lawsuit, which seeks national class-action certification, charges that USAA uses an outside
auditor to assess claims and to "uniformly conclude that medical treatment was not needed."

USAA denies the allegations.

USAA previously settled two class-action lawsuits that accused it of using flawed data to arbitrarily
deny a portion of the medical benefits for injured customers who have personal-injury protection or
other medical-payments coverage on their USAA auto-insurance policies.

One of those cases, filed in Arizona, was settled last summer. Claims are still being processed, so the amount to be paid out under the settlement
hasn't been determined.

The other case, filed in Illinois was settled in 2005. Lawyers for the plaintiffs valued the settlement on their website at $35 million, a figure USAA
spokesman **Paul Berry** called "probably wildly" inflated.

USAA settled the two cases because it was the "right thing to do for our membership," Berry said. He noted both courts endorsed USAA's bill-review
practices.

"We pay all reasonable, necessary and accident-related bills," Berry said. "That doesn't mean we pay all bills. If you had injuries or you received some
treatment that had nothing to do with (an auto) accident, we're not going to pay those bills."

USAA relies on Alabama-based **Auto Injury Solutions** Inc. to help review medical bills to determine whether they are reasonable and necessary and to
weed out duplicative and fraudulent claims. Bills deemed suspicious are reviewed by a doctor or other health-care professionals, Berry said. Even though
one of its doctors concludes the medical care wasn't necessary, the bill still goes through several other reviews, he said.

USAA also can choose to override any instance where a bill is rejected, Berry said.

In the latest Oregon lawsuit, four unrelated USAA customers in separate accidents allege the medical reviews were a "sham."

According to the suit, the reports generated by Auto Injury Solutions and the doctors are "template forms" that include an "electronic signature to give
the false impression that a physician created and approved each report."

"In reality each report generated is substantially the same in reaching the uniform conclusion that benefits should be denied. These reports utilize
identical and the same conclusionary language," the lawsuit contends.

USAA has about 8 million customers, comprised of current and former members of the military and their families. It routinely scores high in customer
satisfaction surveys.

"We work for our members, and our members own this company," Berry said.

**Daniel Gatti**, the Salem, Ore., lawyer who filed the latest lawsuit against USAA and who has been suing insurance companies for 37 years, said USAA
was once one of the most honorable insurers in the country. But now, he said, USAA is more focused on reining in costs.

"It's designed to save USAA money at the expense of our soldiers," Gatti said.

Recent Headlines

High court declines review of Facebook settlement
Twitter boosts IPO price range
Greece's debt inspectors back amid austerity anger
Argentina's Grupo Clarin would split into 6 parts
BlackBerry abandons sale process, CEO out

Berry disputed that, saying USAA paid $1.3 billion in dividends to customers based on its financial performance last year.

**The End of the "Made-In-China" Era**

The 21st century industrial revolution has already begun. All because of an incredible invention that's made in America.

Business Insider calls it "the next trillion dollar industry." The Economist compares its impact to the steam engine and the printing press. And technology experts -- like the guys who brought you the BMW 3-series, the F-35 fighter jet, and Amazon.com -- think it could be "bigger than the internet."

A new investment video reveals the impossible (but real) technology that could make you impossibly rich. Watch it now, before the skeptics on Wall Street wise up and start looking for their piece of the action. Just enter your email:

Enter email address...            Click Here, It's Free!

Terms And Conditions
Sponsored By The Motley Fool

# Exhibit "3"

**Circuit Court For The 13ᵗʰ Judicial Circuit In And For Hillsborough County, Florida**

**If you provided health care treatment or services to people insured by United Services Automobile Association, USAA Casualty Insurance Company, USAA General Indemnity Company, or Garrison Property & Casualty Insurance Company (collectively referred to as "USAA") on or after January 1, 2008, this class action notice may affect your rights.**

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- A health care provider has filed a class action lawsuit alleging that USAA did not fully pay personal injury protection benefits owed to Florida  health care providers.

- A Florida Court has preliminarily approved a statewide class action settlement on behalf of health care service providers in Florida who provided treatment or services to USAA's insureds since January 1, 2008.

- The class action settlement will provide monetary relief to health care providers who timely respond.  Your rights may be affected, and you may have a choice to make now:

| Your Legal Rights and Options in this Class Action Lawsuit: | |
|---|---|
| REQUEST PAYMENT | You may make a claim in the class action for a monetary payment within the time frame allowed.  If you choose to make such a claim, you will give up any rights to sue USAA on your own about the same legal claims in this lawsuit. |
| ASK TO BE EXCLUDED | If you ask to be excluded from the class action, you will receive no payment under the settlement agreement, and you will keep any rights to sue USAA on your own about the same legal claims in this lawsuit. |
| DO NOTHING | By doing nothing, you will not receive any monetary payment, and you will give up any rights to sue USAA on your own about the same legal claims in this lawsuit. |

- Your rights and options – and the deadlines to exercise them – are explained in this notice.  To ask to be excluded, you must act before **January 8, 2013**.

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION**......................................................................................................................**PAGE 3**

    1.     Why did I get this notice package?

    2.     What is this lawsuit about?

    3.     What is a class action?

    4.     Why is there a settlement?

**THE CLAIMS IN THE LAWSUIT**.......................................................................................................**PAGE 3**

    5.     What does the lawsuit complain about?

    6.     How does USAA respond to the complaint?

    7.     What does the settlement provide?

**WHO IS IN THE CLASS**.....................................................................................................................**PAGE 4**

    8.     Am I a Class Member?

    9.     I'm still not sure if I am included.

**YOUR RIGHTS AND OPTIONS**.........................................................................................................**PAGE 4**

    10.    How can I make a claim for a monetary payment?

    11.    What happens if I do nothing at all?

    12.    What happens if I exclude myself?

    13.    How do I ask to be excluded?

    14.    How do I tell the Court that I don't like the Settlement?

    15.    What is the difference between objecting and excluding?

**THE LAWYERS REPRESENTING YOU**.............................................................................................**PAGE 6**

    16.    Do I have a lawyer in this case?

    17.    Should I get my own lawyer?

    18.    How will the lawyers be paid?

**THE FAIRNESS HEARING**................................................................................................................**PAGE 6**

    19.    When and where will the Court decide whether to approve the settlement?

    20.    Do I have to come to the hearing?

    21.    May I speak at the hearing?

**GETTING MORE INFORMATION**....................................................................................................**PAGE 6**

    22.    Are more details available?

# BASIC INFORMATION

---

### 1.  Why did I get this notice package?

USAA's records show that since January 1, 2008, you may have provided treatment or services to injured people covered under automobile insurance policies issued by USAA.  The Court authorized the parties to send you this notice to inform you about a proposed settlement of a class action lawsuit and your options. The Court has not yet decided whether to approve the settlement as final. If the Court finally approves the settlement, after objections and appeals (if any) are resolved, a settlement administrator will make the monetary payments outlined in the settlement agreement.

This package explains the lawsuit, the settlement, what payments may be available, who is eligible for them, and how to make a claim for a payment under the settlement.

This lawsuit is pending in front of Judge Michelle Sisco of the Circuit Court of the 13ᵗʰ Judicial Circuit, Hillsborough County, Florida.  The lawsuit is known as *MRI Associates of St. Pete, Inc., d/b/a Saint Pete MRI, v. USAA*, Case No. 10-CA-016785.  The person who sued is called the Plaintiff.  The companies being sued (USAA) are called the Defendants.

### 2.  What is this lawsuit about?

The lawsuit is about whether USAA improperly failed to make full payment of personal injury protection ("PIP") benefits in an amount allowable under chapter 627 of the Florida Statutes.  Plaintiff alleges that USAA improperly applied the fee schedules in Fla. Stat. § 627.736(5)(a)2.a through f (2007-2011) by paying the fee schedule amount under policies that did not set out the fee schedule provisions as the method for determining the amount of PIP benefits owed. USAA disputes these allegations and denies that it has acted improperly in connection with these PIP claims.

### 3.  What is a class action?

In a class action, a Class Representative, in this case, MRI Associates of St. Pete, Inc., d/b/a Saint Pete MRI, sues on behalf of people who have similar claims.  All these people, called Class Members, make up a Class.  One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. For purposes of the settlement, the parties are requesting the Court to conditionally certify the lawsuit as a class action. The Court will make a final determination as to class certification at a Fairness Hearing.

### 4.  Why is there a settlement?

The Court did not decide in favor of the Plaintiff or USAA, and USAA did not admit any wrongdoing or legal liability. Instead, the parties agreed to a settlement. That way, they avoid the risk and expense of continued litigation, and the Plaintiff and Class Members who follow the procedures outlined in this Notice and qualify under the terms of the settlement may receive additional payment for services they provided to USAA's insureds.  The Class Representative and the attorneys for the proposed Class believe the settlement is in the best interest of the Class Members.

## THE CLAIMS IN THE LAWSUIT

### 5.  What does the lawsuit complain about?

In general, the lawsuit alleges that USAA improperly underpaid PIP claims submitted by the Plaintiff and the Class Members by paying amounts provided by  the fee schedules in Fla. Stat. § 627.736(5)(a)2.a through f (2007-2011) under policies that did not set out the fee schedule provisions as the method for determining the amount of PIP benefits owed. Plaintiff alleges these payments violated Chapter 627 of the Florida Statutes.

### 6.  How does USAA respond to the Complaint?

USAA denies the claims and allegations in the lawsuit.  USAA denies it did anything wrong, and contends that its payments to PIP providers since January 1, 2008 were correct and in accordance with the PIP statute and the insurance policies issued by USAA.

### 7.  What does the settlement provide?

The settlement provides for a monetary payment.  To be eligible for a payment, you must timely submit a properly completed claim form (see attached form) in order to receive the following cash payments:

> The amount of charges billed by the Settlement Class Member ("Billed Charge") less the amount previously allowed by USAA based upon its application of Section 627.736(5)(a)2. ("Allowed Amount") for the health care services identified in the Settlement Claim Form.

The following maximums will apply to the above calculation of Settlement Relief. If the Billed Charge exceeds the amounts applicable to those services as set forth under a. through h. below ("Settlement Relief Charge"), then the Settlement Relief Charge shall replace the Billed Charge in the calculation of Settlement Relief (i.e., Settlement Relief Charge less Allowed Amount):

a. For emergency transport and treatment by providers licensed under chapter 401, the Settlement Relief Charge shall be limited to 80 percent of 250 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, the Settlement Relief Charge shall be limited to 80 percent of 87.5 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by Section 395.002(9), Florida Statutes, provided in a facility licensed under Chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the Settlement Relief Charge shall be limited to 80 percent of 110 percent of the provider's usual and customary charges.

d. For hospital inpatient services, other than emergency services and care, the Settlement Relief Charge shall be limited to 80 percent of 250 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, the Settlement Relief Charge shall be limited to 80 percent of 250 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, the Settlement Relief Charge shall be limited to 80 percent of 250 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, the Settlement Relief Charge shall be limited to 90 percent of the maximum reimbursable allowance under workers' compensation, as determined under Section 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed.

g. When determining settlement payments for magnetic resonance imaging ("MRI") and other imaging services, the Settlement Relief Charge will be based upon the Medicare Part B non-facility price calculated by CMS without reference to the Outpatient Prospective Payment System ("OPPS") limitation.

h. Moreover, for the purposes of Settlement Relief, the above-referenced Medicare fee schedules and rates shall be calculated based on the Medicare prices for the same year in which the services were rendered, unless the Medicare prices for 2007 are higher, in which case payment shall be based on the Medicare prices for 2007. For example, if the amount originally applied was based upon 2007 instead of the year the services were provided, then the Medicare prices for 2007 will likewise be applied to the settlement claim.

Payments will include simple interest in an amount equal to 4 percent per annum on the Settlement Relief amount, calculated starting on the date 30 days after USAA first received the original bill.

## WHO IS IN THE CLASS

### 8. Am I a Class Member?

USAA's records show that you are a Class Member who submitted one or more claims for treatment or services provided to USAA insureds, since January 1, 2008.

The Class does not include USAA, any parent, subsidiary, affiliated or controlled person of USAA, as well as officers, directors, agents, servants and employees of USAA and immediate family members of such persons.

### 9. I'm still not sure if I am included.

If you are still not sure whether you are included, you can write to Class Counsel at Jeeves Law Group, P.A., attn: Scott R. Jeeves, Esq., 954 First Avenue N., St. Petersburg, Florida 33705, for more information.

## YOUR RIGHTS AND OPTIONS

You have to decide whether to stay in the Class or whether to exclude yourself no later than **January 8, 2013**.

### 10. How can I make a claim for a monetary payment?

If you wish to make a claim for monetary payment, then you must do the following:

1. Read this Notice carefully.

2. Review the Claim Form accompanying this Notice.

3. Read the instructions carefully, fill out the form completely, sign it under penalty of perjury, and mail the form to the Class Administrator postmarked no later than **March 22, 2013.**

You must mail your proof of claim forms to the Class Administrator at

**P.O. Box 2847**
**Faribault, MN 55021-8647**

Failure to timely submit a signed and properly completed form will result in your monetary payment claim automatically being denied.

**IMPORTANT. No extension of this deadline will be permitted.** Failure to timely submit a properly completed claim form will result in the automatic denial of your monetary payment claim. Any and all information submitted will be subject to verification by the parties and the Court.

## 11. What happens if I do nothing at all?

By doing nothing, you are staying in the Class. However, if you do not timely submit an eligible and properly completed Claim Form, you will receive no monetary payment. In addition, if you do nothing, you will be legally bound by all of the decisions that the Court makes and deemed to have given up your right to sue USAA in a separate lawsuit regarding the claims and issues raised in this litigation.

## 12. What happens if I exclude myself?

If you exclude yourself from the Class, you will not receive any monetary payment as a result of the settlement. If you do pursue your own lawsuit after you exclude yourself, you'll have to hire your own lawyer for that case, and you will have to prove your claims, without the benefit of the work performed by the lawyers in this class action.

## 13. How do I ask to be excluded?

To exclude yourself, you must send a written request that sets forth: (1) that you are specifically requesting to be excluded from the Class in the Action; (2) your full name and any aliases, current address, telephone number, and all tax identification numbers used during the Class Period; (3) the patient names and dates of service for any claims or bills to be opted out of this Settlement; and (4) your signature, or if a corporation or other entity, the signature of the entity or its authorized representative, including the name and position of the signatory.

If the opt-out request is submitted by someone other than the Settlement Class Member, or an officer or authorized employee of the Settlement Class Member, then the third party signor (e.g., attorney, billing agent, or other third party) must include the following attestation on the opt-out request: "I certify and attest to the Court that the Settlement Class Member on whose behalf this opt-out request is submitted has been provided a copy of and opportunity to read the Class Notice and thereafter specifically requested to be excluded from this Settlement Class." The opt-out request must include the patient names and dates of service for the bills or claims for which the class member intends to opt-out. Otherwise, the opt-out request will apply to all patients and dates of service covered by the Settlement.

You must mail your exclusion request postmarked by **January 8, 2013**, to: Class Administrator, P.O. Box 2847, Faribault, MN 55021-8647.

## 14. How do I tell the Court that I don't like the Settlement?

You can object to the settlement. You must give reasons in writing as to why you think the Court should not approve it, and the Court will consider your views. To object, you must send your written objection to the Class Administrator at **P.O. Box 2847, Faribault, MN 55021-8647**, with your specific reasons in writing, no later than **December 9, 2012**. Class Members may object on their own or through an attorney retained at their own expense. If you retain an attorney to represent you, the attorney must file a notice of appearance with the Clerk of the Court, **George Edgecomb Courthouse, 800 E. Twiggs St., Room 530, Tampa, Florida 33602**, and serve copies of same on Class Counsel, the Class Administrator, and USAA's counsel, no later than **December 9, 2012;** otherwise, they will not be allowed to make any objection(s) at the Final Fairness hearing.

## 15. What is the difference between objecting and excluding?

Objecting is telling the Court that you don't like something about the settlement. Excluding yourself is telling the Court that you don't want to be part of the settlement. If you exclude yourself, you have no basis to object to the settlement because the settlement will not affect your legal rights.

# THE LAWYERS REPRESENTING YOU

---

### 16. Do I have a lawyer in this case?

The Court appointed the Jeeves Law Group, The Divale Law Group, P.A., de la Parte & Gilbert, P.A., and Craig E. Rothburd, P.A., as counsel for the Class Members. More information about these law firms, their practices, and their lawyers' experience is available at www.JeevesLawGroup.com. These firms are experienced in handling similar cases. You may contact Class Counsel by writing to Scott R. Jeeves, Esq., Jeeves Law Group, P.A., 954 First Avenue North, St. Petersburg, Florida 33705 or calling (727)894-2929.

### 17. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel is working on your behalf. You may also choose to hire your own lawyer at your own expense.

### 18. How will the lawyers be paid?

USAA has agreed to pay Class Counsel their reasonable attorney's fees and costs, separate and apart from the recovery for the Class under the Settlement. The Court will decide the amount of any award to Class Counsel. You will not have to pay any of these fees or expenses.

## THE FAIRNESS HEARING

### 19. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing on February 5, 2013 at the courthouse of the Circuit Court of the Thirteenth Judicial Circuit, Tampa, Hillsborough County, 800 E. Twiggs Street, Tampa, Florida 33602. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court will also decide how much USAA must pay Class Counsel for attorney's fees and costs, which will be separate from the amount that USAA has agreed to pay the Class Members. After the hearing, the Court will decide whether to finally approve the settlement, finally certify the Class, and enter a Final Order directing the settlement to be implemented. We do not know how long these decisions will take.

### 20. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. You may attend the hearing at your own expense. If you send an objection and a notice of your intent to appear at the Fairness Hearing, you may come in person to the Court for the Fairness Hearing or retain your own attorney to appear for you. If you have submitted an objection, you do not need to attend the Fairness Hearing. The Court will consider your objection if it was timely submitted, regardless of whether you attend the hearing in person.

### 21. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must mail to the Class Administrator, at **P.O. Box 2847, Faribault, MN 55021-8647**, and file with the Court, at the **George Edgecomb Courthouse, 800 E. Twiggs St., Room 530, Tampa, Florida 33602**, a notice of intention to appear at the Fairness Hearing by sending a letter stating that it is your "Notice of Intention To Appear." Be sure to include your name, address, telephone number, claim information, and your signature. Your Notice of Intention To Appear must be postmarked no later than **December 9, 2012; otherwise, you will not be permitted to speak or make any objection at the Final Fairness hearing**.

## GETTING MORE INFORMATION

### 22. Are more details available?

You may contact class counsel identified in paragraph 16 above to obtain more details regarding this settlement. The settlement agreement, preliminary approval order and operative pleadings are available at www.floridapipsettlement.com.